UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEBORA BAYNE, and all other persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NAPW, INC. *d/b/a* National Association of Professional Women and *d/b/a* International Association of Women, and PROFESSIONAL DIVERSITY NETWORK, INC. *d/b/a* National Association of Professional Women and *d/b/a* International Association of Women,<br><br>Defendants. | Docket No.: 18-cv-3591<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Named Plaintiff DEBORA BAYNE ("Bayne" or "Named Plaintiff") on behalf of herself and all others similarly situated, by and through her attorneys, upon personal knowledge as to herself and upon information and belief as to other matters, brings this Collective and Class Action Complaint against Defendants NAPW, INC. and PROFESSIONAL DIVERSITY NETWORK, INC. (collectively "Defendants") and alleges as follows:

**INTRODUCTION**

1. Named Plaintiff brings this lawsuit seeking recovery against Defendants for Defendants' violation of the Fair Labor Standards Act, as amended (the "FLSA" or the "Act"), 29 U.S.C. § 201 *et. seq.* and the New York Labor Law ("NYLL") Article 6 §§ 195, 198, Article 19 §§ 652, 663; and 12 New York Codes, Rules, and Regulations ("NYCRR") § 142-2.2.

2. Named Plaintiff brings this lawsuit against Defendants on behalf of herself and (1) all other individuals who currently or formerly worked for Defendants, including Old NAPW (as explained below), as sales representatives selling memberships to the National Association of

1

Professional Women and the International Association of Women and timely files a consent to join form (the "Collective"); and (2) all other individuals who currently or formerly worked for Defendants, including Old NAPW, as sales representatives in New York selling memberships to the National Association of Professional Women and the International Association of Women from June 20, 2012 through the date of trial (the "Class").

3. Defendants maintained a policy and practice of compensating members of the putative Collective and Class on a salary plus commission basis.

4. As a result of this policy and practice, Defendants failed to pay Named Plaintiff and members of the putative Collective and Class overtime compensation when they worked in excess of 40 hours in a given week.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and by 29 U.S.C. § 216(b), in that this is a civil action arising under the FLSA. This Court has supplemental jurisdiction over Named Plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. §1367(a).

6. Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

7. At all times material hereto, Defendants were and remain enterprises engaged in interstate commerce or in the production of interstate goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(r) and 203(s). More specifically, Defendants own, operate, and/or manage a networking organization exclusively for women, and solicit memberships from women all over the country.

## PARTIES

8. Named Plaintiff Bayne is an individual who is a resident of New York and was employed as a sales representative by Defendants from approximately September 2009 through February 14, 2018.

9. Defendant Professional Diversity Network, Inc. is publicly traded on NASDAQ as IPDN (hereinafter referred to as "PDN") and is a foreign business corporate organized under the laws of the state of Delaware and authorized to do business within the State of New York with a principal place of business located at 801 West Adams Street, Suite 600, Chicago, Illinois, 60607.

10. Defendant NAPW, Inc. ("NAPW") is a foreign business corporate organized under the laws of the state of Delaware and authorized to do business within the State of New York with a principal place of business located at 801 West Adams Street, Suite 600, Chicago, Illinois, 60607.

### *History of the Defendants and the National Association of Professional Women*

11. NAPW initially registered as a corporation with the NYS Department of State on or about September 22, 2014. At that time, NAPW operated under the corporate entity name "NAPW Merger Sub, Inc." In or about February 2018, NAPW changed its corporate entity name to "NAPW, Inc."

12. NAPW is a wholly owned subsidiary of PDN.

13. NAPW and PDN jointly operate the women's business networking organization known as National Association of Professional Women since September 2014.

14. According to PDN's 2017 annual report filed with the Security and Exchange Commission, PDN acquired the National Association of Professional Women in September 2014 through a merger of a different corporate entity also named NAPW, Inc. (hereinafter referred to as "Old NAPW") with and into NAPW Merger Sub, Inc.

15. Old NAPW was a for-profit domestic business corporation organized under the laws of the state of New York. The founder, president, and Chief Executive Officer of Old NAPW was Matthew Proman.

16. Old NAPW was initially registered with the NYS Department of State on October 3, 2007. Old NAPW's registration status with the NYS Department of State became inactive on September 24, 2014 as a result of the merger.

17. PDN and NAPW were the sole remaining entities following the merger with Old NAPW.

18. PDN and NAPW are jointly and severally liable for Old NAPW's failure to pay wages, including the unpaid overtime alleged in this action.

19. Before and after the merger, the National Association of Professional Women was operated by the same individual, Matthew Proman. The workforce and supervisory personnel for the National Association of Professional Women's remained substantially the same. The business purpose and business model remained the same.

20. On January 8, 2018, PDN announced that it would be expanding its women's networking services through launching the International Association of Women.

21. The National Association of Professional Women and International Association of Women are the same exact operation.

22. In or about January 2018, Named Plaintiff was issued a sales script to sell International Association of Women memberships. Other than the organization name, the sales script for the International Association of Women was identical to the one for the National Association of Professional Women.

23. According to Wikipedia, a press release issued on the International Association of Women's blog on January 13, 2018 stated: "The National Association of Professional Women ("NAPW") has been rebranded as IAW through this launch."

24. As of June 20, 2018, the PDN website has a link labeled "NAPW." That link leads directly to the International Association of Women's website.

25. The website for the National Association of Professional Women, www.napw.com, has not only disappeared, but entering the URL "www.napw.com" leads to www.iawomen.com, the website for the International Association of Women.

26. The current website for the International Association of Women is nearly identical in context and format to the website formerly belonging to National Association of Professional Women.

27. The two organization have the same phone number for their corporate headquarters, 866-540-6279.

28. The two organization have the same phone number for membership services, including billing and renewal questions, 888-852-1600.

29. Defendants employed Named Plaintiff and members of the putative Class and Collective at all relevant times.

30. Upon information and belief, at all times relevant to this Complaint, Defendants' annual gross volume of sales made or business done was not less than $500,000.00.

31. At all times relevant to this Complaint, Defendants were and are employers engaged in commerce under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, the NYLL, and the NYCRR.

## **CLASS AND COLLECTIVE ALLEGATIONS**

32. This action is properly maintainable as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), and as a Class Action under Rule 23 of the Federal Rules of Civil Procedure ("FRCP") with respect to the NYLL and NYCRR claims asserted herein.

33. This action is brought on behalf of Named Plaintiff and members of the Collective and Class as previously defined.

34. Named Plaintiff and members of the Collective who elect to opt-in are all victims of the Defendants' common policy and/or plan to violate the FLSA by failing to provide overtime wages, at the rate of one and one-half times the regular rate of pay, for all time worked in excess of 40 hours in any given week pursuant to 29 U.S.C. § 207.

35. The putative class is so numerous that joinder of all members is impracticable. The size of the putative class is believed to be in excess of 100 employees. In addition, the names of all potential members of the putative class are not known.

36. The questions of law and fact common to the putative Class and Collective predominate over any questions affecting only individual members. These questions of law and fact include, but are not limited to, whether the Defendants failed to pay overtime wages, at the rate of one and one-half times the regular rate of pay, for all hours worked in excess of 40 hours in any given week.

37. The claims of the Named Plaintiff are typical of the claims of the putative Class and Collective. The Named Plaintiff and putative Class and Collective were all subject to Defendants' policies and willful practices of failing to pay overtime wages, at the rate of one and one-half times the regular rate of pay, for all hours worked in excess of 40 hours in any given

week. Named Plaintiff and putative Class and Collective thus have sustained similar injuries as a result of the Defendants' actions.

38. Defendants uniformly applied, and do apply, the same employment policies, practices, and procedures to all sales representatives who sold memberships for the National Association of Professional Women and the International Association of Women.

39. Named Plaintiff and her counsel will fairly and adequately protect the interests of the putative class. The Named Plaintiff has retained counsel experienced in complex wage and hour class and collective action litigation.

40. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The individual Named Plaintiff and putative Class lack the financial resources to adequately prosecute separate lawsuits against Defendants. Furthermore, the damages for each individual are small compared to the expense and burden of individual prosecution of this litigation.

41. A class action under Rule 23 and a collective action under § 216(b) also prevent unduly duplicative litigation resulting from inconsistent judgments pertaining to the Defendants' policies.

42. Named Plaintiff hereby incorporates the allegations contained below related to Plaintiff, the Class, and Collective.

### **FACTS**

43. Named Plaintiff was employed by Defendants from approximately September 2009 to February 14, 2018 as a sales representative.

44. Throughout her employment, Named Plaintiff sold networking memberships to the National Association of Professional Women and the International Association of Women's for the benefit of Defendants over the telephone.

7

45. Named Plaintiff typically worked Monday through Friday from 8:30 a.m. to 7:00 p.m. Sometimes Named Plaintiff would work from 8:30 a.m. to 9:00 p.m.

46. Named Plaintiff typically worked in excess of 50 hours each week.

47. When Named Plaintiff worked in excess of 40 hours in a week, Named Plaintiff was not paid overtime at one and one-half times her regular rate of pay.

48. Named Plaintiff was not paid hourly.

49. Named Plaintiff was paid $500.00 per week, plus commission.

50. Named Plaintiff's commission was typically a 10-15% of the membership sales that she made.

51. Like Named Plaintiff, members of the putative class and collective were also paid on a part salary part commission basis, and not on an hourly basis.

52. Defendants' policy and practice of paying its sales representatives on a part salary part commission basis, and not on an hourly basis.

53. Like Named Plaintiff, members of the putative class and collective also worked in excess of 40 hours in a week.

54. As a result of Defendants' common payroll policy and practice, Named Plaintiff and members of the putative class and collective did not receive overtime compensation as is required under the FLSA and NYLL.

55. Upon information and belief, Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and applicable State law by failing to maintain proper and complete timesheets or payroll records.

56. Named Plaintiff's paystubs did not accurately reflect Named Plaintiff's regular rate of pay or hours worked.

57. Normally, Named Plaintiff's paystub did not reflect any hours worked or hourly rate. When Named Plaintiff's paystubs would show hours worked, they were capped at 40, even though she almost always worked more 40 hours in a week.

58. Like Named Plaintiff, putative class members also received paychecks that reflected inaccurate hours worked or no hours worked at all along with no hourly rate of pay.

59. Upon information and belief, Defendants maintained control, oversight, and direction over the operations of the work performed by Named Plaintiff and putative Class members, including payroll practices, and had the power to hire and fire Named Plaintiff and putative Class members.

60. Upon information and belief, Defendants had substantial control of the working conditions of Named Plaintiff and putative Class members and over the unlawful policies and practices alleged herein.

61. Defendants have long had a pattern and practice of failing to pay overtime compensation to its sales representatives. In February 2012, Matthew Proman, a corporate executive for both Old NAPW and NAPW, executed a consent judgment on behalf of himself and the National Association of Professional Women permanently enjoining and restraining Proman and the National Association of Professional Women from violating the Fair Labor Standards Act in the following ways: (1) they shall pay overtime compensation to their employees at one and one-half times their regular rates of pay; and (2) they shall make, keep, and preserve adequate records of their employees and of the hours, and other conditions and practices of employment in accordance with Section 11(c) of the Fair Labor Standards Act and 29 C.F.R. Part 516. *See Hilda Solis v. NAPW, Inc.*, et al., Docket No. 12-cv-568 (SJF) (ETB) (E.D.N.Y.) (at Document No. 3, pp. 1-2).

62. Proman and the National Association of Professional Women were required to pay in excess of $60,000.00 in overtime compensation to its employees, including its sales representatives. *Id*. at p. 2.

63. Named Plaintiff Bayne was a recipient of back wages prescribed in the consent judgment. *Id*. at p. 6.

## COUNT I
## FLSA OVERTIME COMPENSATION

64. Named Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs.

65. Pursuant to the FLSA, 29 U.S.C § 207, "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

66. Further, pursuant to 29 U.S.C. § 203(d), an "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization."

67. Named Plaintiff and other members of the putative Collective are employees within the meaning contemplated in FLSA, 29 U.S.C. §203(e).

68. NAPW and PDN constitute employers within the meaning contemplated in the FLSA, 29 U.S.C. § 203(d) and, consequently, are liable for violations of the FLSA.

69. Named Plaintiff and members of the putative Collective worked more than 40 hours during a work week.

70. Upon information and belief, Defendants failed to pay Named Plaintiff and other members of the putative Collective all earned overtime wages, at the rate of one and one-half times the regular rate of pay, for the time in which they worked after the first forty hours in any given week in violation of 29 U.S.C. § 207.

71. The failure of Defendants to pay Named Plaintiff and other members of the putative Collective their rightfully owed wages and overtime compensation was willful.

72. By the foregoing reasons, Defendants are liable to Named Plaintiff and members of the putative Collective in an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages, interest, attorneys' fees and costs.

## COUNT II
## NEW YORK OVERTIME COMPENSATION LAW

73. Named Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

74. Title 12 NYCRR § 142-2.2 requires that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate."

75. New York Labor Law § 663, provides that "[i]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this article, he may recover in a civil action the amount of any such underpayments, together with costs and such reasonable attorney's fees."

76. Upon information and belief, Named Plaintiff and other members of the putative Class worked more than forty hours a week while working for Defendants.

77. Upon information and belief, the Named Plaintiff and other members of the putative class did not receive the New York statutory overtime compensation for all hours worked after the first forty hours of work in a week in violation of 12 NYCRR § 142-2.2

78. Consequently, by failing to pay to Named Plaintiff and other members of the putative Class overtime compensation, Defendants violated New York Labor Law §§ 663 and 12 NYCRR § 142-2.2.

79. Defendants' failure to pay Named Plaintiff and members of the putative Class overtime compensation was willful.

80. By the foregoing reasons, Defendants have violated New York Labor Law §§ 663 and 12 NYCRR § 142-2.2 and are liable to the Named Plaintiffs and other members of the putative Class in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

## COUNT III
## NEW YORK § 195(3) WAGE STATEMENT VIOLATION

81. Named Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

82. Pursuant to Section 195(3) of the New York Labor Law, an employer is required to furnish each employee with a statement with every payment of wages that identifies, among other things, whether the employee is paid by the hour, shift, day, week, salary, piece, commission, or in another manner. For employees that are not exempt from overtime compensation under New York state law or regulation, such wage statement must also include "the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked."

83. Pursuant to Section 198-1(d) of the New York Labor Law, an employee that does not receive a wage statement, as required by NYLL § 195(3), may bring a civil action to recover

damages of $250 for each work day that the violation occurs or continues to occur, but not to exceed $5,000.

84. Defendants did not provide Named Plaintiff and members of the putative class with wage statements that reflected their hourly rates.

85. Defendants did not provide Named Plaintiff and members of the putative Class with wage statements that accurately reflected their hours worked and often did not reflect any hours worked.

86. Defendants violated NYLL § 195(3) by failing to provide Named Plaintiff and members of the putative Class with wage statements containing the information required by NYLL § 195(3).

87. The failure of Defendants to provide complete and accurate wage statements is in violation of NYLL § 195 was willful and repeated.

88. As a result of Defendants' unlawful acts, Named Plaintiff and members fo the putative Class have been deprived of the appropriate wage statements, and Defendants are liable in the appropriate statutory amounts due, plus attorney's fees, costs and any other damages permitted under the NYLL.

## JURY TRIAL

Named Plaintiff and similarly situated employees demand a jury trial.

**WHEREFORE**, Named Plaintiff, individually and on behalf of the putative Collective and Class, seek the following relief:

(1) on her first cause of action, against Defendants in an amount to be determined at trial, plus liquidated damages as permitted under the FLSA in the amount equal to the amount of unpaid

wages, interest, attorneys' fees and costs;

(2) on her second cause of action, in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees and costs;

(3) on her third cause of action, in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees and costs; and

(4) such other injunctive and equitable relief as this Court shall deem just and proper.

Dated: June 20, 2018
New York, New York

Respectfully submitted,

**VIRGINIA & AMBINDER, LLP**

/s/Jack L. Newhouse
Lloyd R. Ambinder, Esq.
Jack L. Newhouse, Esq.
Michele Moreno, Esq.
40 Broad Street, 7th Floor
New York, New York 10004
Telephone: (212) 943-9080
Facsimile: (212) 943-9082
jnewhouse@vandallp.com

*Attorneys for Named Plaintiff and the Putative Class and Collective*