# EXHIBIT A

# In the Matter Of:

Bayne, Debora vs NAPW, Inc.

# MELANIE FARRIS

*November 06, 2019*

*Job Number: 585624*

Litigation Services  |  800-330-1112
www.litigationservices.com

```
 1   UNITED STATES DISTRICT COURT

 2   EASTERN DISTRICT OF NEW YORK

 3   ----------------------------------------X

 4   DEBORA BAYNE, and all other
     persons similarly situated,
 5                         Plaintiff(s),

 6          - against -

 7                            Index No.18-CV-3591

 8   NAPW, INC. d/b/a National
     Association of Professional
 9   Women and d/b/a International
     Association of Women, and
10   PROFESSIONAL DIVERSITY
     NETWORK, INC. d/b/a National
11   Association of Professional
     Women and d/b/a International
12   Association of Women,

13                         Defendant(s).

14   ----------------------------------------X

15                     40 Broad Street
                       New York, New York
16
                       November 6, 2019
17                     10:06 a.m.

18

19

20             DEPOSITION of MELANIE FARRIS, a

21     Plaintiff in the above-entitled action, was taken

22     pursuant to Notice, at the above time and place,

23     held before a Notary Public within and for the

24     State of New York.

25   Job No. 585624
```

```
 1   A P P E A R A N C E S:

 2


 3   VIRGINIA & AMBINDER
     Attorneys for the Plaintiffs
 4        40 Broad, 7th Floor
          New York, New York 10004
 5   BY:  JACK NEWHOUSE, ESQ.

 6


 7


 8
     DINSMORE & SHOHL LLP
 9   Attorneys for the Defendants
          222 West Adams Street, Suite 3400
10        Chicago, Illinois 60606
     BY:  JOHNER T. WILSON III, ESQ.
11

12


13   Also Present:

14   Michele Moreno
     Virginia & Ambinder
15

16

17

18

19

20

21

22

23

24

25
```

 1  would be the lead plaintiff in this lawsuit?
 2              MR. NEWHOUSE:  Objection.
 3              MR. WILSON:  Basis?
 4              MR. NEWHOUSE:  Attorney/client
 5         privilege.
 6     Q    Did you and Deb have conversations about
 7  who should be the lead plaintiff?
 8     A    Absolutely not.
 9     Q    Do you know what was considered --
10     A    No, I don't.
11     Q    -- as to why you wouldn't be the lead
12  plaintiff?
13     A    No, I don't.
14              MR. NEWHOUSE:  Objection, calls
15         for speculation.
16              MR. WILSON:  If she knows?
17              MR. NEWHOUSE:  About other
18         people, sure.  The question calls for
19         speculation.
20     Q    You were the first person to raise the
21  issue that something should be done?
22              MR. NEWHOUSE:  Objection, calls
23         for speculation.
24     Q    You approached Deb with the issue that you
25  had about your paychecks; correct?

1      A    Absolutely, yes, I did.

2      Q    You and Debora together decided that
3 something should be done?

4      A    Correct.

5      Q    And you decided that that something would
6 be a lawsuit?

7      A    Yes.

8      Q    Who made first contact with the law firm
9 you are represented by?

10           MR. NEWHOUSE:  Between her and
11          Deb?

12     Q    Between you and Deb.

13     A    I honestly -- I was recommended to this law
14 firm by another lawyer from Levittown.

15     Q    Who?

16     A    Joseph.  I don't know Joseph's last name.

17     Q    Joseph is a lawyer with this firm?

18     A    I don't think so.

19     Q    Where is Joseph -- you said he's a lawyer
20 who --

21     A    In Levittown.

22     Q    Did you speak with Joseph about your
23 issues?

24     A    Over Passover, yeah.  I was doing Passover
25 dinner; I was on the phone.  I started talking; he

1  started listening.

2     Q    I am asking because when I asked you who
3  you talked to, you didn't mention Joseph.

4             MR. NEWHOUSE: He's an
5            attorney.

6             MR. WILSON: She didn't mention
7            Joseph. Are you claiming privilege
8            over her conversation with Joseph?

9             MR. NEWHOUSE: He certainly is
10           privileged.

11            MR. WILSON: Is there agreement
12           between your firm and Joseph on
13           representation?

14            MR. NEWHOUSE: Absolutely not,
15           no.

16     A    I did nothing with Joseph. Just talked.

17            MR. WILSON: I'm wondering how
18           that conversation is privileged.

19            MR. NEWHOUSE: If he's an
20           attorney and she went to him about a
21           legal issue, that would be a
22           communication that's privileged.

23            MR. WILSON: Are you saying he
24           represents her?

25            MR. NEWHOUSE: You don't have

| | | |
|---|---|---|
| 1 | | to be represented by the attorney in |
| 2 | | order for it to be privileged. |
| 3 | Q | I need Joseph's last name.  I think we've |
| 4 | got to revisit this.  Give me a phone number you have | |
| 5 | for Joseph. | |
| 6 | A | We're talking almost two years ago. |
| 7 | Q | That's fine.  You don't have any phone |
| 8 | number for Joseph? | |
| 9 | A | No. |
| 10 | Q | Where does Joseph work? |
| 11 | A | At a law firm. |
| 12 | Q | What is the name of that law firm? |
| 13 | A | I don't know. |
| 14 | Q | You said Levington? |
| 15 | A | Levittown. |
| 16 | Q | Can you spell that for me. |
| 17 | A | L-E-V-I-T-O-W-N.  [sic] |
| 18 | Q | That's here in New York; correct? |
| 19 | A | Correct, Long Island. |
| 20 | Q | Tell me.  You said this conversation |
| 21 | occurred during Passover? | |
| 22 | A | Yep. |
| 23 | Q | Passover dinner? |
| 24 | A | Yes.  I have two Jewish children. |
| 25 | Q | This was in 2018? |

```
 1        A    Yes.
 2        Q    How long did this conversation last with
 3   Joseph?
 4        A    About thirty minutes.
 5      * Q    Did Joseph give you legal advise?
 6                  MR. NEWHOUSE:  Objection,
 7             attorney/client privilege.  You're
 8             asking about whether --
 9                  MR. WILSON:  I'm asking her if
10             she received legal advise.  That's
11             not privileged.  She can say yes; she
12             can say no.
13                  MR. NEWHOUSE:  You're asking
14             about the substance of his --
15                  MR. WILSON:  I'm asking if he
16             provided legal advice.  That's a very
17             specific question.  If he provided
18             legal advice, it's privileged.  If he
19             didn't, it's not privileged.  I am
20             really getting perturbed by your
21             obstructionary practices on this
22             topic.
23                  MR. NEWHOUSE:  You can raise
24             your voice all you want.
25                  MR. WILSON:  I apologize if I
```

1  raised my voice.  That wasn't

2  necessary.

3      MR. NEWHOUSE:  That doesn't

4  change the subject that she testified

5  she went to him.  He's an attorney.

6  She was communicating with him about

7  a potential lawsuit.  Any further

8  substantive portion of her

9  conversation including whether or not

10 he provided her with legal advise is

11 privileged.

12     MR. WILSON:  I would challenge

13 that statement.  I would object to

14 the leading aspect and the coaching

15 aspect of your explanation.  If he

16 had a conversation with her and did

17 not provide legal advice, there's

18 zero basis to claim privilege over

19 that conversation.  That's what makes

20 a communication privileged.  So I

21 will ask my question.  You can

22 instructed your witness not to

23 answer, and I will certify the

24 question and we can have the judge

25 look it.  Are you instructing the

1 witness not to answer?
2     MR. NEWHOUSE: One moment.
3     MR. WILSON: I apologize for
4 elevating my voice slightly.
5     MR. NEWHOUSE: Yes. I'm
6 directing my client not to answer.
7     MR. WILSON: Certify the
8 question.
9   Q  Other than the conversation during Passover
10 dinner, did you have any subsequent conversation with
11 Joseph, the attorney?
12     MR. NEWHOUSE: You can answer.
13   A  Yes, I did.
14   Q  How many times have you spoken with Joseph?
15   A  Twice.
16   Q  When did the second conversation occur?
17     MR. NEWHOUSE: You could
18 answer.
19   A  April. I don't have exact date.
20   Q  After the Passover dinner?
21   A  Yes.
22   Q  Are there any other conversations you are
23 not talking about?
24   A  No.
25   Q  What other family members did you discuss

```
 1   the basis for your lawsuit with?
 2        A    None.
 3        Q    The conversation you had with Joseph during
 4   the Passover dinner, who else was present?
 5                  MR. NEWHOUSE:  Present on the
 6             phone?
 7        A    In the room?
 8        Q    Yes.
 9        A    My children.
10        Q    Which children?
11        A    Sean Paul.
12        Q    How old is Sean?
13        A    Thirteen.
14        Q    Who else?
15        A    Mckenzie, M-C-K-E-N-Z-I-E, twelve.
16        Q    Who else?
17        A    Daniel, twenty-two with autism.
18        Q    They were in the room when you had the
19   conversation?
20        A    I was in the kitchen; they were in the
21   living room.
22        Q    This is Passover dinner; you were having
23   Passover dinner at your home?
24        A    Yes.
25        Q    Did you have guests?
```

```
 1              MR. NEWHOUSE:  In other words?
 2              MR. WILSON:  No wall separating
 3          them; they were there.  Children
 4          present.
 5              MR. NEWHOUSE:  I am simply
 6          stating my objection to the
 7          statement.
 8      Q   No other conversation with anyone else
 9   about this, the factual basis for the case?
10      A   No, no other people.
11      Q   Was Debora Bayne the first person you spoke
12   with about the issue that you believe existed with your
13   paychecks?
14      A   Yes.
15              MR. WILSON:  Give me one moment
16          to review my notes.
17      Q   During your time at NAPW, were you coached
18   on the importance of time management skills?
19      A   I didn't need to be coached.  I do good
20   time management.  I was never coached.
21      Q   Were you instructed or informed that time
22   management was one of the core values at NAPW?
23      A   I don't recall.
24      Q   Were there opportunities for advancement at
25   NAPW?
```