UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DEBORA BAYNE, and all other persons similarly situated, | : : : | |
| Plaintiff, | : : : : : | |
| vs. | : : | Case No. 1:18-cv-03591-MKB-RER |
| | : : | |
| NAPW, INC. d/b/a National Association of Professional Women and d/b/a International Association of Women, and PROFESSIONAL DIVERSITY NETWORK, INC. d/b/a National Association of Professional Women and d/b/a International Association of Women, | : : : : : : : : | |
| Defendants | : : | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**Table of Contents**

I.    PRELIMINARY STATEMENT ..................................................................................1

II.   FACTUAL SUMMARY ............................................................................................1

III.  ARGUMENT...............................................................................................................2

      A.   Plaintiffs' Proposed Class Definition is Overbroad and the Proposed
           Notice is Flawed ..............................................................................................2

      B.   Certification Improper Because Plaintiffs Cannot Meet Each Required
           Element of Rule 23 .........................................................................................3

           1.   Numerosity.............................................................................................4

           2.   Commonality..........................................................................................7

           3.   Predominance and Superiority..............................................................10

IV.  CONCLUSION..........................................................................................................12

**Cases**

*Charlot v. Ecolab, Inc.*,
  136 F. Supp. 3d 433 (E.D.N.Y. 2015) .................................................................................... 9

*Charron v. Pinnacle Grp. N.Y. LLC*,
  269 F.R.D. 221 (S.D.N.Y. 2010) ............................................................................................ 4

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) ................................................................................................................ 4

*In re Initial Pub. Offering Sec. Litig.*,
  471 F. 3d 24 (2d Cir. 2006) .................................................................................................... 4

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  725 F.3d 244 (D.C. Cir. 2013) .............................................................................................. 10

*Kuebel v. Black & Decker Inc.*,
  643 F.3d 352 (2d Cir. 2011) ................................................................................................... 7

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3rd Cir. 2012) .................................................................................................. 2

*McBean v. City of N.Y.*,
  260 F.R.D. 120 (S.D.N.Y. 2009) ............................................................................................ 4

*Messner v. Northshore Univ. HealthSystems*,
  669 F.3d 802 (7th Cir. 2012) .................................................................................................. 2

*Romero v. H.B. Auto. Group, Inc.*,
  2012 U.S. Dist. LEXIS 61151 (S.D.N.Y. May 1, 2012) ........................................................ 9

*Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*,
  2013 U.S. App. LEXIS 13842, *16-17 (10th Cir. 2013) ....................................................... 11

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................................................ 4

*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2012) .................................................................................................. 2

**Statutes**

28 U.S.C. §1367 ............................................................................................................................ 11

29 U.S.C. §207(i) ............................................................................................................................ 9

Fed. R. Civ. P. 23(a)(1) ................................................................................................................ 4

Fed. R. Civ. P. 23(a)(2) ................................................................................................................ 7

Fed. R. Civ. P. 23(a)(1)-(4) .......................................................................................................... 3

Fed. R. Civ. P. 23(b)(3) ................................................................................................................ 4

Defendants NAPW, Inc. and Professional Diversity Network, Inc. ("Defendants") respectfully submit this memorandum of law in opposition to Plaintiffs' motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## I.   PRELIMINARY STATEMENT

Defendants oppose Plaintiffs' motion for class certification of the pendant New York State claims on the grounds that Plaintiffs class definition is unduly overbroad and includes individuals who suffered no harm, Plaintiffs have not sufficiently demonstrated that numerosity is met or that class action is the superior method for addressing Plaintiffs' state law claims. For the reasons discussed below, Defendants respectfully request that this Court decline to certify Plaintiffs' state law claims.

## II.   FACTUAL SUMMARY

PDN is an operator of professional networks with a focus on diversity. PDN assists its registered users and members in their efforts to (i) connect with like-minded individuals; (ii) identify career opportunities within the network; and (iii) connect members with prospective employers. Similarly, NAPW is a professional association and networking platform. In or around 2014, NAPW became a wholly owned subsidiary of PDN.

Lead Plaintiffs Deborah Bayne and Melanie Farris are former sales representatives of NAPW. Plaintiffs bring collective and class claims alleging that Defendants' pay practices violate the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Plaintiffs seek overtime under state and federal law, and wage statement penalties under New York law.

Discovery in this action is closed. Plaintiffs bring the underlying motion to certify their state law claims; Defendants oppose it.

### III.     ARGUMENT

### A.     Plaintiffs' Proposed Class Definition is Overbroad and the Proposed Notice is Flawed

As a preliminary matter, Plaintiffs' proposed class definition is overbroad. An implicit prerequisite into certifying a class is an adequate class definition, which must be precise and unambiguous. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591-92 (3rd Cir. 2012). It must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012). It should not be defined broadly to include a great number of members who could not have been harmed by the defendants' alleged unlawful conduct. *Messner v. Northshore Univ. HealthSystems*, 669 F.3d 802, 824-25 (7th Cir. 2012).

Plaintiffs assert two causes of action under New York Labor Law: (1) failure to pay overtime; and (2) inaccurate itemized wage statements. Plaintiffs, however, fail to address these alleged harms when defining a potential class. Plaintiffs ask this Court to certify a class of:

> All individuals employed in New York from June 20, 2012 to the present by NAPW, Inc. and Professional Diversity Network, Inc. to sell memberships to the women's networking organization known as National Association of Professional Women and the International Association of Women. Corporate officers, shareholders, directors and administrative employees shall not be part of the proposed class.

(*See* Plaintiff's Memorandum p.2)

This sweeping definition includes all salespeople, regardless of the number of hours worked or type of compensation received, and without regard to whether the individuals were subject to an exemption from overtime. As defined, the proposed class definition fails because it includes individuals who did not work any overtime or suffer any damages (including part time employees and/or those individuals who did not work more than forty hours in a workweek).

Plaintiff's proposed class notice is also flawed.  (*See* Newhouse Decl., Ex. A).  The notice could be read in a manner that improperly states the calculation of overtime premiums.  Rather than simply stating that overtime premiums are paid at one and a half times the employee's regular rate of pay, the notice states that overtime is paid "at time and 1 ½ the regular hourly wage for all hours worked over 40 each week" – although Plaintiffs likely intended the reference to "1 ½" to be read as "one half," this portion of the notice ("1 ½" ) could be misinterpreted to mean "time plus one plus one half," which is an improper statement of the overtime calculation rate.  In the event that this Court certifies a class, Defendants respectfully request that this portion of the notice be rewritten.  In addition, as written, the notice also fails to address that liability for the alleged claims has not yet been determined and it fails to state that Defendants are represented by counsel, they dispute the claims, and reserve their rights to assert all legal and factual defenses.  In addition, the notice does not reference this Court, or explain the difference between the FLSA opt-in portion of this action, and the New York Labor Law opt-out requirements.  Defendants therefore object to the class notice as written.

### B. Certification Improper Because Plaintiffs Cannot Meet Each Required Element of Rule 23

Under Federal Rule of Civil Procedure 23 ("Rule 23"), a plaintiff may bring a civil action on behalf of a class only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(1)-(4).  In addition, under Rule 23(b), the court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action

3

is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In addition to the requirements of numerosity, commonality, typicality, adequate representation, predominance, and superiority set forth in Rule 23, the Second Circuit has recognized an "implied requirement of ascertainability." *In re Initial Pub. Offering Sec. Litig.*, 471 F. 3d 24, 30 (2d Cir. 2006). To be ascertainable, the class must be "readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling." *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010) (quoting *McBean v. City of N.Y.*, 260 F.R.D. 120, 132-33 (S.D.N.Y. 2009)).

Rule 23 does not set forth a mere pleading standard. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "A party seeking class certification must affirmatively demonstrate his compliance with the Rule," and "be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id*. Class certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) are met. *Id*. at 350-51 (quoting *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 161 (1982)). As discussed below, Plaintiffs have not set forth a clearly defined class supported by sufficient evidence showing these requirements are met.

       **1.**    **Numerosity**

To satisfy Rule 23, the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A finding of numerosity must be based on direct or circumstantial evidence and not on speculation, even if it is "tempting to assume" that there must be a large number of class members. *Marcus*, 687 F.3d at 595-97.

Here, Plaintiffs summarily conclude that numerosity is met in this case because: (i) NAPW produced time records showing there were "at least 200 putative class members who worked between 2015 and the present;" and (ii) the corporate representative estimated that the Company employed between 75 and 100 sales representatives in the Garden City office at its peak. (Plaintiff's Memo. at p.9; citing Newhouse Decl. ¶71; Ex. K (Bdzyl Depo. pp. 34:24-35:1)). Plaintiffs further speculate that because there are forty FLSA Opt-In Plaintiffs who worked in New York, this Court should assume the existence of "far more putative class members." Plaintiffs' logic is flawed and misstates the evidence.

Plaintiffs' reliance on the number of employees appearing in the time records is misplaced. First, Plaintiffs conveniently overlook the fact that Defendants maintained offices and/or employed persons in locations outside of New York, including without limitation, in California, Colorado, Florida, Georgia, Illinois, Michigan, Tennessee and Texas. (Declaration of Heather N. Stone ("Stone Decl.") ¶5-6). The time records produced by Defendants in this action for the 2015 to present timeframe include time punch data for several individuals who worked outside of New York (including, but not limited to, the nineteen other salespersons who opted into the FLSA representative action from other states). Despite the fact that Defendants produced these time punch records early in the discovery process and well in advance of the corporate representative's deposition, Plaintiffs failed to question the corporate representative about these time records in his deposition or otherwise conduct any written discovery to identify whether these records belong to members of the putative New York class.

It is Plaintiffs' burden to show that numerosity is met, and it is therefore improper for Plaintiffs to conclude (without supporting evidence) that the time records all belong to putative New

5

York class members, especially when Plaintiffs are already aware that the time records apply to numerous people outside of New York.

Plaintiffs' dependence on the testimony of the corporate representative is similarly flawed. Although the corporate representative, Joseph Bdzyl, estimated that the company employed 75 to 100 salespersons at its peak, Mr. Bdzyl was not asked, nor did he state, when that "peak" was. Thus, Mr. Bdzyl's testimony is not determinative of whether there are additional potential putative class members who are not already aware of or part of this case.

Consistent with this Court's prior orders, Defendants previously sent two separate notices of the FLSA claims in this action approximately 200 salespeople. [Dkt. 20 & 54]. These FLSA notices were based on Plaintiffs' same underlying theory of the case, and yielded only forty individuals from New York who decided to actively participate. Notably, of those forty New York Opt-In Plaintiffs, eight of them incurred no overtime and three incurred only fractional amounts of overtime. (See Plaintiff's Exhibit X: A. Prusky, D. Baker, T. Smith, D. Henry, L. Docyk, R. Perera, S. Pavlatos, T. Musa, V. Canas, A. Daley, L. Ducati, and M. Chayut.)[1] Yet, Plaintiffs include these individuals in their count in order to argue that numerosity exists.

Numerosity among the Opt-In Plaintiffs, however, only exists if the inquiry stops at whether the individuals were employed by the Company (as suggested by Plaintiffs' proposed class definition). But, more is required to establish liability on a claim for unpaid overtime. Plaintiffs must prove that they performed work for which they were not properly compensated, and that the

---

[1] Although Plaintiff's Exhibit X implies that A. Daley, L. Ducati and M. Chayut incurred fractional amounts of overtime, the actual time punch records for these (and other) Opt-In Plaintiffs strongly suggest that they incurred no overtime whatsoever because they each had one or more occasions where they neglected to clock in at the end of the workday, or for example, remained clocked in over the weekend. When these timekeeping errors are removed from the equation, the number of individuals who worked in excess of 40 hours per week significantly decreases. Stone Decl. ¶7-9.

Case 1:18-cv-03591-MKB-RER   Document 87-1   Filed 03/18/21   Page 11 of 16 PageID #: 1375


employer had actual or constructive knowledge of that work. *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011). Of the New York based Opt-In Plaintiffs, up to twelve of them have no claims for unpaid overtime.

Stated differently, only twenty-eight New Yorkers who received a notice of this claim and opted into the FLSA collective action have colorable claims for unpaid overtime (this is less than fifty percent of the opt-in Plaintiffs, and far less than the number of putative class members identified in the cases cited by Plaintiffs in their moving papers). See Motion at p. 9 citing *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F. 3d 234, 252 (2nd Cir 2011) (presuming numerosity is met with forty putative plaintiffs (internal citation omitted)).[2] This low number strongly suggests that Plaintiffs have not met their burden of showing that numerosity exists and joinder is impractical.

### 2.     **Commonality**

Next, the court must find that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

Earlier in this litigation, this Court conditionally certified the FLSA portion of the case pursuant to Section 216(b) of the Fair Labor Standards Act. [Dkt. 20-26]  The conditional certification allowed Plaintiffs to give notice and opportunity to join (opt-in) to those individuals who believed they were similarly situated to the named Plaintiffs based on Defendants' alleged unfair pay practices.  Certification at that stage did not address the merits of the claims, and instead, allowed the parties to conduct discovery to determine whether there were merits questions that could be answered collectively.  The factual showing required at the conditional certification stage was low

---

[2] Incidentally, the time records from the nationwide FLSA portion of this claim show that there are over 100 salespersons who worked no overtime whatsoever.  See Stone Declaration ¶10. Thus, this is further evidence that certification and notice based on the employees' role alone is overbroad and improper.

7

and did not require the named Plaintiff to have to prove the FLSA violation or show that all potential collective members would eventually be certified.

Plaintiffs now seek to certify their New York (opt-out) claims based on the same broad class definition given in the FLSA (opt-in) collective action.  (Compare FLSA notice [Dkt 20, Ex. F] to Plaintiffs' proposed class definition and notice [Moving Papers at p. 2 and Ex. A].)  As noted above, Plaintiff's proposed class definition (which includes all salespersons who worked for Defendants in New York) is overbroad because it fails to sufficiently identify the alleged wrongs that Plaintiffs' suit seeks to redress.

Here, Plaintiffs' class certification motion under Rule 23 seeks to certify a class of all persons who were employed by Defendants to sell memberships in New York.  As defined, the proposed class members need to look no further than their job descriptions to determine whether they will be included in Plaintiffs' proposed class of "similarly situated" employees.  The relevant inquiry, however, is not, "were you a salesperson of Defendants during the relevant period in New York?"  This class definition artificially increases the number of people in the opt-out class, and does not focus on whether the individuals were actually harmed by Defendants' alleged conduct.  The correct inquiry into a claim for unpaid overtime is not simply "what was your role" – but instead, did you work overtime and did Defendants' pay practices cause you harm?  Individuals suffer no harm and thus lack standing to sue for unpaid overtime if they did not work in excess of forty hours per week, and/or they received a proper payment, and/or were subject to an exemption from overtime.

Plaintiffs conveniently ignore the fact that the time records produced in discovery demonstrate that there were numerous salesperson who incurred no overtime, and thus, they are not similarly situated to those who purportedly worked in excess of forty hours per workweek and allegedly received improper compensation for it.  See, Stone Decl. at ¶8-10.

8

Moreover, individualized analysis is needed to determine whether the individuals who claim they are owed overtime are subject to a state or federal overtime exemption. Although Plaintiffs filed declarations in support of their motion that contained broad generalizations that Plaintiffs "regularly" worked overtime, they fail to address whether an overtime exemption applied or could apply to those they seek to represent.

The possibility of an overtime exemption is relevant to the analysis of whether employees are similarly situated to each other and satisfy the commonalty requirement of Rule 23 of the Federal Rules of Civil Procedure. *Romero v. H.B. Auto. Group, Inc.*, 2012 U.S. Dist. LEXIS 61151 (S.D.N.Y. May 1, 2012). New York Labor Law recognizes the same exemptions as provided under the FLSA.

Section 7(i) of the FLSA exempts employees paid commission by retail establishments from overtime if they meet the following requirements: (1) the employee is employed by a retail or service establishment; (2) the employee's regular rate of pay exceeds one and one-half times the applicable minimum wage for every hour worked in a workweek in which overtime hours are worked; and (3) more than half the employee's total earnings in a representative period consist of commissions. 29 U.S.C. §207(i); *Charlot v. Ecolab, Inc.*, 136 F. Supp. 3d 433, 449 (E.D.N.Y. 2015). Here, individual inquiries are required to show both liability for unpaid overtime, and the inherently individualized defense of whether an exemption applies.

Individual inquiries are also needed to determine whether the employees' wage statements complied with New York Labor Law section 195.3. Plaintiffs propose to certify a class that includes all salespersons who sold memberships in New York during the relevant period without regard to whether those individuals worked any overtime hours and/or without regard to whether the wage statements were correct for the employees. As Plaintiffs acknowledge in their moving papers, the

9

Company issued differing types of wage statements; some included the number of hours worked, while others did not, and some wage statements included the rate of pay, while others did not. Moreover, New York Labor Law section 195.3 only requires that overtime rates and hours worked be listed for non-exempt employees. Individualized analysis of the wage statements is therefore required to determine whether the wage statement should have reflected overtime hours, but did not, and whether an exemption to overtime would provide a defense for the absence of the overtime hours on the wage statements.

### 3. Predominance and Superiority

Rule 23(b)(3) applies to individualized claims for damages and requires Plaintiffs to establish predominance and superiority before a class may be certified.

A court may find a lack of predominance if Plaintiffs cannot prove injury, causation, or an element of a substantive claim on a class wide basis. Predominance may also be lacking if Defendants can assert individualized defenses to class members' claims. *Marcus*, 687 F.3d at 600-05; *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252-53 (D.C. Cir. 2013). As discussed above, individual inquiries abound in this case because Plaintiffs' proposed class requires individualized analysis into whether overtime was worked, whether the individual workers were subject to an exemption from overtime, and/or whether their compensation was accurately recorded on their wage statements.

Superiority is also lacking in this case. This Court has original jurisdiction over the federal Fair Labor Standards Act claim, which is being asserted by forty New Yorkers, of whom only twenty-eight have actionable claims. Despite the low number of individuals over whom this Court has original jurisdiction (of the FLSA opt-in claims), Plaintiffs ask this Court to exercise supplemental jurisdiction over the state law claims of these persons and potentially "hundreds" of

others, based on Plaintiffs' assertion that the federal and state overtime claims are all part of the same case or controversy.  See, 28 U.S.C. §1367.  The records of the FLSA Plaintiffs, however, reveal that many individuals who worked as salespeople performed no overtime, and the Company's timekeeping and wage statement practices varied over the course of time.  While Plaintiffs argue that these distinctions are a matter of damages, not liability, Defendants disagree.  Liability for unpaid overtime is determined on an employee-by-employee and workweek by workweek basis, which requires a showing that overtime hours were worked.  Correspondingly, Plaintiffs must prove that the level of pay was improper under both state and federal law, and incorrected reported on an itemized wage statement under New York State law.  Although "individualized monetary claims belong in Rule 23(b)(3), predominance may be destroyed if individualized issues will overwhelm those questions common to the class."  *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 2013 U.S. App. LEXIS 13842, *16-17 (10th Cir. 2013).

      Because this analysis requires this Court to engage in a substantial amount of additional work to determine which persons properly belong in this class, and because the absence of that analysis would unfairly allow every New York salesperson into the opt-out class and contravene the purpose of the FLSA opt-in procedure, this Court, at its discretion, may decline to extend supplemental jurisdiction to the state law claims.  While the total number of potential class members in the state law class action is not determinative, this Court already has before it a finite, concrete number of people who actually wanted to join in the action.  In this setting, arguments that joinder is impractical, or that a Rule 23 class extending beyond this self-defined group is a superior method of proceeding, are counterintuitive.  Joinder of these twenty-eight individuals' claims are not only practicable, but in essence, has already been accomplished through the FLSA opt-in process.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's motion for class certification. In the alternative, Defendants respectfully request that this Court limit its exercise of supplemental jurisdiction and only effectuate joinder of New York state claims of the opt-in class members who worked in excess of forty hours per week.

Dated:  March 5, 2021

Respectfully submitted:

DINSMORE & SHOHL LLP

By:  s/ Heather N. Stone
Johner T. Wilson, III
222 W. Adams Street, Suite 3400
Chicago, Illinois 60606
Tel: (312) 837-4306
Email: JT.Wilson@dinsmore.com

Heather N. Stone
655 W. Broadway, Suite 800
San Diego, California 92106
Tel: (619) 400-0481
Heather.Stone@dinsmore.com

*Attorneys for Defendants*