# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

―――――――――――――

Nº 18-CV-3591 (MKB) (RER)

―――――――――――――

DEBORAH BAYNE, AND ALL OTHERS SIMILARLY SITUATED,

Plaintiffs,

VERSUS

NAPW, INC. D/B/A NATIONAL ASSOCIATION OF
PROFESSIONAL WOMEN, AND PROFESSIONAL DIVERSITY NETWORK, INC. D/B/A
INTERNATIONAL ASSOCIATION OF WOMEN,

Defendants.

―――――――――――

**REPORT & RECOMMENDATION**

August 10, 2021

―――――――――――

**TO THE HONORABLE MARGO K. BRODIE,**
**CHIEF UNITED STATES DISTRICT JUDGE**

**RAMON E. REYES, JR., U.S.M.J.:**

Debora Bayne ("Bayne") brings this action on behalf of herself and other similarly situated

current and former sales representatives of defendants NAPW, Inc. d/b/a National Association of

Professional Women ("NAPW") and Professional Diversity Network, Inc. ("PDN") d/b/a NAPW

and International Association of Women ("IAW") (collectively, "Defendants"), alleging violations

of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. and New York Labor Law

("NYLL"), §§190 *et seq*. (Dkt. No. 1 ("Compl.")). Bayne and several FLSA opt-in plaintiffs ("Opt-

in Plaintiffs") (collectively, "Plaintiffs") have moved pursuant to Rule 23 of the Federal Rules of

Civil Procedure to certify a class of all sales representatives employed by Defendants in New York

1

from July 12, 2012 to the present, and distribute notice to putative class members. (Dkt. No. 86-1 ("Pls' Mem.") at 1-2). Defendants oppose the motion on the grounds that: (1) the proposed class definition is overbroad; (2) Plaintiffs have not established numerosity, commonality or predominance and superiority; and (3) the proposed class notice is flawed. (Dkt. No. 87-1 ("Defs' Mem.") at 1-11). Your Honor has referred the motion to me for a report and recommendation. (Order dated 03/18/21). For the following reasons, I respectfully recommend that Plaintiffs' motion be granted in part.

## BACKGROUND

### I.    Factual Allegations

PDN and NAPW are Delaware corporations authorized to do business in New York and with the same principal place of business in Chicago, Illinois. (Compl., ¶¶ 9-10). NAPW is PDN's wholly owned subsidiary. (*Id.*, ¶12). NAPW and PDN operate for-profit women's business networking organizations, the National Association of Professional Women and the International Association of Women, that generate revenue, in part, by selling memberships to women. (*Id.*, ¶¶ 9, 13, 44). Bayne worked as a sales representative for Defendants from September 2009 until approximately February 14, 2018, selling memberships to the two organizations over the telephone, and was paid a flat salary plus commissions. (*Id.*, ¶¶ 8, 44, 49). Bayne alleges that she typically worked more than fifty hours per week but was not paid an overtime premium. (*Id.*, ¶¶ 45-47). Bayne also alleges that it was Defendants' policy to pay all sales representatives a salary plus commissions, rather than an hourly rate, and that sales representatives like herself regularly worked more than forty hours per week without receiving overtime compensation as required by the FLSA § 207, and NYLL § 663 and 12 NYCRR § 142-2.2. (*Id.*, ¶¶ 52-54). Bayne further alleges

that Defendants failed to provide her and her co-workers with wage statements that accurately reflected their regular rate of pay and number of hours worked as required by NYLL § 195(3). (*Id.*, ¶ 55-58.)

## II.    Procedural History

Bayne filed the Complaint on June 20, 2018. (Dkt. No. 1). On September 14, 2018, Bayne moved pursuant to 29 U.S.C. § 216(b) to conditionally certify an FLSA collective action and distribute notices to putative collective action members. (Dkt. Nos. 20-25). Bayne's motion was granted over Defendants' opposition, and the Court conditionally certified a collective of:

> All current and former employees of NAPW, Inc. and Professional Diversity Network, Inc. who worked as sales representatives selling memberships to the National Association of Professional Women or International Association of Women from three years prior to the Order through the present.

(Dkt No. 26). Ultimately, fifty-nine current or former PDN and NAPW employees opted into the collective, forty of whom were employed in New York. (Dkt. Nos. 27, 29-31, 33, 35-36, 55-58; 86-2 at ¶ 9).  Following discovery, Plaintiffs then filed the instant motion for class certification of the New York Labor Law claims, which Defendants oppose. (Dkt. Nos. 86-88.) Plaintiffs seek to certify a class consisting of:

> All individuals employed in New York from June 20, 2012 to the present by NAPW, Inc. and Professional Diversity Network, Inc. to sell memberships to the women's networking organization known as National Association of Professional Women and the International Association of Women.

(Dkt. No. 86-1 at 2.)

## LEGAL STANDARDS

### I.      Federal and State Labor Law

Under the FLSA, subject to certain exceptions, an employee who works more than 40 hours in a workweek must "receive[ ] compensation for his [or her] employment in excess of [40] hours ... at a rate not less than one and one-half times the regular rate at which he [or she] is employed." 29 U.S.C. § 207(a)(1). The NYLL also generally provides for "one and one-half times the employee's regular rate" when the employee works more than 40 hours in a workweek. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2; *see Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 519 (S.D.N.Y. 2013). Moreover, the NYLL obligates an employer to "furnish each employee with a statement with every payment of wages" that lists information such as "the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked." N.Y. Lab. Law § 195(3).

"Because FLSA and NYLL claims usually revolve around the same set of facts, plaintiffs frequently bring both types of claims together in a single action using the procedural mechanisms available under 29 U.S.C. § 216(b) to pursue the FLSA claims as a collective action and under [Federal] Rule [of Civil Procedure] 23 to pursue the NYLL claims as a class action under the district court's supplemental jurisdiction." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011).

### II.     Class Certification

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)) (internal quotation marks omitted). To depart from that rule, and for a matter to proceed as a class action, a plaintiff must satisfy the

requirements laid out in Rule 23 of the Federal Rules of Civil Procedure. "Rule 23 should be construed 'liberal[ly] rather than restrictive[ly.]'" *Belfiore v. P&G*, 311 F.R.D. 29, 60 (E.D.N.Y. 2015) (quoting *Gortat v. Capala Bros.*, 257 F.R.D. 353, 361–62 (E.D.N.Y. 2009)) (citing *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)) (emphasis in *Belfiore*). District courts have "broad discretion in determining whether an action should be certified," and general preference for courts in the Second Circuit is to grant rather than to deny class certification. *Id*. (quoting *Haynes v. Planet Automall, Inc.*, 276 F.R.D. 65, 73 (E.D.N.Y. 2011)); *accord Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 28 (2d Cir. 2003). Wage and hour cases are particularly well-suited for class certification. *See e.g., Cazares v. AVA Rest. Corp.*, No. 15-CV-577 (KAM) (RML), 2017 WL 1229727, at *6 (E.D.N.Y. Mar. 31, 2017); *Lopez v. Setauket Car Wash & Detail Ctr.*, 314 F.R.D. 26 (E.D.N.Y. 2016). When deciding whether to certify a class, "the question is not whether the [] plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).

Under Rule 23(a) a plaintiff must first satisfy the four prerequisites of numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Because a class representative must be part of the class, possess the same interest, and suffer the same injury as the class members, Rule 23(a) ensures that named plaintiffs are appropriate representatives of the class whose claims they wish to litigate. *Dukes*, 564 U.S. at 348–49 ("[t]he Rules four requirements . . . effectively limit the class claims to those fairly encompassed by the named plaintiff's claims.") (internal quotation marks and citations omitted).

In addition, implied in Rule 23(a) is the requirement that membership of the class be objectively ascertainable. *See In re Petrobras Sec. Litig.*, 862 F.3d 250, 260 (2d Cir. 2017). This requirement "demands that a class be 'sufficiently definite so that it is administratively feasible for

the court to determine whether a particular individual is a member.'" *Id*. (quoting *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015)) (internal quotation marks omitted). "A class is ascertainable when defined by objective criteria . . . and when identifying its members would not require a mini-hearing on the merits of each case." *Brecher*, 806 F.3d at 24–25.

A plaintiff also must satisfy at least one requirement listed in Rule 23(b). Fed. R. Civ. P. 23(b); *Dukes*, 564 U.S. at 345. Here, Rule 23(b)(3) – "predominance" – is implicated. Under Rule 23(b)(3), the court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). That the Rule 23(a) criteria are met is a strong indicator that Rule 23(b)(3) is satisfied. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982)). Predominance is satisfied where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (quoting *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000)). The essential inquiry is whether "*liability* can be determined on a class-wide basis, even when there are some individualized damage issues." *Id*. at 139 (emphasis added and citation omitted).

There is "overwhelming precedent in the Second Circuit supporting certification of simultaneous NYLL class actions and FLSA collective actions." *Damasia v. Duane Reade, Inc.*, 250 F.R.D. 152, 164 (S.D.N.Y. 2008); *see e.g., Ramirez-Marin v. JD Classic Builders Corp.*, No. 16-CV-5584 (DLI) (RER) 2017 U.S. Dist. LEXIS 86891, at *14 (E.D.N.Y. June 5, 2017) (noting that courts in the Second Circuit have "overwhelming" held that a federal court "adjudicating

FLSA collective actions may exercise supplemental jurisdiction over parallel state law wage and hour class claims."), *adopted by* 2017 U.S. Dist. LEXIS 161769 (Sept. 30, 2017); *Guzman v. VLM, Inc.*, No. 07-CV-1126 (JG) (RER), 2008 U.S. Dist. LEXIS 15821, at *31 (E.D.N.Y. Mar. 2, 2008) ("there is no reason that FLSA's collective action procedure is incompatible with maintaining a state law class action over the same conduct.")

## DISCUSSION

The court addresses each of Rule 23's requirements for class certification in turn.

### I.  Numerosity

Rule 23(a)(1) requires the putative class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Rule does not require evidence of exact class size or identity of class members to satisfy the numerosity requirement. *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)). Determination of the practicability of joinder of all putative class members depends on all of the circumstances surrounding a case, not on mere numbers. *Id.* at 936. Because "the numerosity requirement 'imposes no absolute limitations' and requires a case-by-case analysis of the facts, . . . courts within the Second Circuit generally presume that joinder of all putative class members is impracticable if the class has more than forty members." *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 99 (E.D.N.Y. 2012) (internal citation omitted).

Plaintiffs contend that numerosity is easily satisfied based on: (1) testimony from Defendants' corporate representative that at its peak Defendants' had *seventy-five to one hundred* sales representatives working in their New York office at any one time; (2) Bayne's and the other Opt-in Plaintiffs' testimony that they worked with *sixty* other sales representatives in Defendants' New York office during the relevant period; (3) Defendants' document production which identifies at

least *two hundred* sales representatives that worked in New York between 2015 and 2019; (4) *forty* of the FLSA Opt-in Plaintiffs who worked in New York during the relevant period; and, (5) the fact that all of Defendants' sales representatives were subject to the same pay practices. (Dkt. 86-1 at 9). I agree.

Defendants contest numerosity, arguing principally that the documents produced to date and the testimony of all involved indicate that at best only twenty-eight of the FLSA Opt-in Plaintiffs have valid overtime claims, which is far less than the presumptive forty members necessary to constitute a certifiable Rule 23 class. (Dkt. No. 87-1 at 7 ("Stated differently, only twenty-eight New Yorkers who received a notice of this claim and opted into the FLSA collective action have colorable claims for unpaid overtime (this is less than fifty percent of the opt-in Plaintiffs, and far less than the number of putative class members identified in the cases cited by Plaintiffs in their moving papers). . . This low number strongly suggests that Plaintiffs have not met their burden of showing that numerosity exists and joinder is impractical.)) Defendants' argument is misplaced for at least two reasons.

First, putting aside that Defendants do not cite to any caselaw establishing that Rule 23 numerosity must be determined solely, or even principally, on the number of FLSA opt-in plaintiffs that have valid claims, it ignores the practical reality that the FLSA collective spans only three years prior to the filing of the lawsuit, and not the full six years of the NYLL class. Even if there were only twenty-eight collective members with FLSA overtime claims within the preceding three years (the FLSA statute of limitations period), that does not mean there are not another twelve or more potential Rule 23 NYLL class members in the prior three-year period (the NYLL statute of limitations period). Moreover, the documents upon which Defendants rely in part to establish that there are only twenty-eight potential class members are from June 2015 to July 2019, and do

not even include any class members employed from June 2012 to mid-2015. Defendants have admitted that access to the wage and hour records for the entire NYLL period is no longer possible, and they cannot rely upon that to defeat a motion for class certification. (Pls' Mem. at 5; Dkt. No. 86-20 (email from Defendants' counsel indicating that access to payroll records for 2012-2015 is no longer possible given the demise of Defendants' former "payroll service provider".). In this situation it is reasonable to assume that given the presence of at least twenty-eight FLSA collective action members, that Defendants' representative and Plaintiffs testified to anywhere between sixty and one hundred sales representatives being employed at any given time during the NYLL period, and that all sales representatives were subject to the same pay practices, there are at least twelve more potential members within the larger NYLL class period. *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 208 (E.D.N.Y. 2015) ("in assessing numerosity a court may make common sense assumptions without the need for precise quantification of the class.") (citations and quotations omitted); *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 204 (E.D.N.Y. 2005) ("courts are empowered to make common sense assumptions to support a finding of numerosity.") (citations and quotations omitted)).

Second, Defendants' argument puts the proverbial cart before the horse. Defendants insist that Plaintiffs must prove the merits of the class claims before class certification can even be granted. (Dkt. No. 87-1 at 6 ("Numerosity . . . only exists if the inquiry stops at whether the individuals were employed by [Defendants] (as suggested by Plaintiffs' proposed class definition). But, more is required to establish *liability* on a claim for unpaid overtime. *Plaintiffs must prove that they performed work for which they were not properly compensated . . ..*") (emphases added)).[1] While

---

[1] As Plaintiffs correctly note, Defendants' reliance on *Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011) is misplaced as it involves a summary judgment determination, not a determination on a motion for class certification.

it is true that Plaintiffs must eventually prove liability, they need not do so now. And while the Court's class-certification analysis must be rigorous and may entail some overlap with the merits, "Rule 23 grants courts no license to engage in free-ranging merits inquires at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Fund*, 568 U.S. 455, 465–66 (2013). That is precisely what Defendants are asking the Court to do – engage in a free-ranging merits inquiry at the certification stage. This the Court will not do.

Based on the testimony of Defendants' representative, the limited wage and hour records Defendants produced, Plaintiffs' testimony, and that at least twenty-eight Opt-in Plaintiffs have FLSA claims, Plaintiffs have established that at a minimum there are between sixty and two hundred potential NYLL class members.  This is more than enough to satisfy Plaintiffs' burden to establish numerosity.

## II.      Commonality

"Commonality" refers to Rule 23(a)'s requirement that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The standard for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative—that is, there need only be a single issue common to all members of the class." *Savino v. Computer Credit, Inc.*, 173 F.R.D. 346, 352 (E.D.N.Y. 1997), *aff'd* 164 F.3d 81 (2d Cir. 1998) (citing *Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153–54 (2d Cir. 1983)). The Supreme Court has interpreted this condition as requiring that the class claims "depend upon a common contention . . . capable of classwide resolution." *Dukes,* 564 U.S. at 350 (internal quotation marks omitted). In other words, all the claims should rise or fall—at least in part—on the determination of a single

question. What that determination will be has no bearing at this stage; commonality is not a back door into an inquiry into the merits of the class claims. *Amgen Inc.*, 568 U.S. at 459.

Plaintiffs contend that commonality is established because Defendants engaged in a common policy and practice of failing: (1) to pay overtime compensation; and, (2) to provide Plaintiffs with accurate wage statements pursuant to the NYLL. (Dkt. No. 86-1 at 10-11). Notably, Defendants do not dispute these specific factual contentions. Rather, Defendants argue that commonality is lacking because: (1) not all members of the proposed class may have suffered damages – *i.e.*, Plaintiffs have not proved that *all* class members worked overtime during the relevant period and some may in fact did not work any overtime at all; and (2) some members of the proposed class may be exempt from the overtime protections of the FLSA and NYLL pursuant to the commissioned sales exemption. (Dkt. No. 87-1 at 8-9). Defendants' arguments are not persuasive.

First, a common policy of failing to pay overtime is sufficient to satisfy Rule 23(a)(2)'s commonality requirement. *Atakhanova v. Home Family Care, Inc.,* 16-CV-6707 (KAM)(RML), 2020 WL 4207437, at *9–11 (E.D.N.Y. July 22, 2020) (citing *Rivera v. Harvest Bakery, Inc.*, 312 F.R.D. 254, 271 (E.D.N.Y. 2016) (defendants' admissions of failure to pay overtime rates, along with plaintiffs' evidence that overtime was not paid, satisfied commonality requirement)); *see also Poplawski v. Metroplex on the Atl., LLC*, No. 11-cv-3765, 2012 WL 1107711, at *7 (E.D.N.Y. Apr. 2, 2012); *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 127 (S.D.N.Y. 2011) ("claims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification."). Because Defendants do not seriously dispute that there was a common policy to not pay overtime or provide adequate wage statements, Plaintiffs' contentions as to commonality must stand.

Second, variations regarding the number of hours worked among the proposed class are relevant primarily "to the damages that each employee is owed, not to the common question of Defendants' liability." *Espinoza*, 280 F.R.D. at 127; *see also Ramirez v. Riverbay Corp.*, 39 F.Supp.3d 354, 364 (S.D.N.Y. 2014) ("it is axiomatic that '[t]he commonality requirement may be met when individual circumstances of class members differ,' as long as class members' 'injuries derive from a unitary course of conduct.'") (quoting *Espinoza*, 280 F.R.D. at 127); *Poplawski*, 2012 WL 1107711 at *8 ("While damages owed to each employee will require individual determinations, this computation issue does not destroy commonality."); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 199 (S.D.N.Y. 2011) ("the need for an individualized determination of damages suffered by each class member generally does not defeat the [commonality] requirement.") (quoting *Padilla v. Maersk Line, Ltd.*, 271 F.R.D. 444, 448 (S.D.N.Y. 2010)). As with their argument as to numerosity, Defendants seek to inject a merits-based inquiry into the determination of commonality. Such an effort must be rejected. Suffice it to say that Plaintiffs have established that Defendants operated under a common payment policy that treated all sales representatives equally – they were not paid overtime for any hours they worked in excess of 40 per week, or provided with an adequate wage statement under the NYLL. At this point, that, coupled with their evidentiary submissions, is enough to sustain commonality.

Finally, Defendants' commissioned sales exemption argument fares no better. (Defs' Mem. at 9). Even putting aside that this is a merits-based inquiry, Defendants cite to no evidence to support the contention that even one member of the putative class is subject to the commissioned sales exemption. (*Id.*) Notably, despite having payroll records for the FLSA period, from which the commissioned sales exemption can be gleaned, [2] Defendants do not point to a single FLSA Opt-in

---

[2] Defendants contend that the commissioned sales exemption applies if: "(1) the employee is employed by a retail or service establishment; (2) the employee's regular rate of pay exceeds one and one-half times the applicable minimum

Plaintiff, or any other, who would qualify for the that exemption. That Defendants do not have payroll records for the larger NYLL period further questions the viability of their proffered defense. This Court is unwilling to recommend denial of class certification for lack of commonality based on the argument that the claims of some class members may be subject to an unproven, and likely unprovable, affirmative defense.[3]

## III.   Typicality

Rule 23(a) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). In the Second Circuit, this "typicality" requirement is met where "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). Typicality does not require that the facts underlying each class member's claims be identical. *In re Cablevision Consumer Litig.*, No. 10-CV-4992 (JS) (AKT), 2014 WL 1330546, at *8 (E.D.N.Y. Mar. 31, 2014). It merely demands that "the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Caridad v. Metro-N. Commuter R.R.,* 191 F.3d 283, 293

---

wage for every hour worked in a workweek in which overtime hours are worked; and (3) more than half the employee's total earnings in a representative period consist of commissions." (Defs' Mem. at (citing 29 U.S.C. §207(i); *Charlot v. Ecolab, Inc.*, 136 F. Supp. 3d 433, 449 (E.D.N.Y. 2015)). The latter two elements can be determined based on the employee's payroll records and the applicable minimum wage.

[3] Defendants' exemption argument also tacitly proves that commonality exists. One of the elements of the purported exemption is that the class members were employed by a "retail or service establishment." 29 U.S.C. § 207(i). Whether Defendants operate a "retail or service establishment" is subject to generalized proof on a class-wide basis. That some of the other issues relevant to the exemption may be subject to individualized proof does not defeat commonality. Commonality does not require that all issues be subject to generalized proof on a class-wide basis. This is especially so in wage and hour cases, where there will always be individualized questions that relate equally to both liability and damages – how many hours were worked, what wages were paid, etc. Were Defendants' argument to be accepted, there would be no class actions in wage and hour cases. That is not the law, nor should it be.

(2d Cir. 1999), *overruled on other grounds by In re IPO*, 471 F.3d 24, 42 (2d Cir. 2006) (internal

citation and quotation marks omitted).[4]

Relying in part on testimony from Defendants' witness that all sales representatives were

subject to the same compensation policies and practices, and Bayne's and Opt-in Plaintiffs'

testimony that they were not paid for their overtime hours or provided with proper wage

statements, Plaintiffs argue that their claims are typical of the claims of the putative class as they

arise from the same conduct and are based on the same legal theory – the failure to pay overtime

compensation and to provide proper wage statements according to New York law. **(**Pls' Mem. at

16). Defendants do not contest that this element has been satisfied. (Defs' Mem. at 3-11).

Typicality is therefore established.

## IV.    Adequacy

Rule 23 conditions class certification on a determination that "the representative parties will

fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Second Circuit

has characterized this rule as demanding "inquiry as to whether: 1) plaintiff's interests are

antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified,

experienced, and able to conduct the litigation." *Bafa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,

222 F.3d 52, 60 (2d Cir. 2000) (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285,

291 (2d Cir. 1992)). Courts in this District have also considered whether the named plaintiff

"exhibit[s] enough integrity and credibility to convince the court that the named plaintiff will

diligently perform its fiduciary duties to the class." *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90,

---

[4] The typicality requirement should not be a significant impediment to class certification. *Ackerman*, 2013 WL 7044866, at *11. Indeed, because Rule 23 is given liberal construction, it is permissible in certain circumstances to identify typicality by "conceptualizing the common legal and factual questions at [a] high level of abstraction." *Marisol A.*, 126 F.3d at 377. Such abstraction becomes inappropriate, however, when it results in non-economical litigation or leaves certain class members out in the cold with respect to the vigorous prosecution of their claims. *See Rodriguez*, 300 F.R.D. at 136.

100 (E.D.N.Y. 2012). "Courts rarely deny class certification on the basis of the inadequacy of class representatives, doing so 'only in flagrant cases, where the putative class representatives display an alarming unfamiliarity with the suit, display an unwillingness to learn about the facts underlying their claims, or are so lacking in credibility that they are likely to harm their case.'" *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 51 (S.D.N.Y. 2012) (quoting *Koss v. Wackenhut Corp.*, 2009 WL 928087, at *7 (S.D.N.Y. Mar. 30, 2009)).

Defendants do not contest that the adequacy requirement has been met, and there should be no question that it has.  The record is clear that Bayne's and the Opt-in Plaintiffs' interests are not antagonistic to those of the putative class; indeed, they appear to be completely aligned, and to this point they have zealously represented the interests of the class through motion practice and discovery. Moreover, as demonstrated in the Plaintiffs' moving papers and this Court's fifteen-year tenure on the bench, during which Plaintiffs' counsel has appeared on numerous such cases, Plaintiffs' attorneys are qualified, experienced, and able to conduct the litigation. Adequacy of representation simply is not an issue.

## V.   Ascertainability

"The ascertainability doctrine that governs in this Circuit requires only that a class be defined using objective criteria that establish a membership with definite boundaries." *In re Petrobas Sec.,* 862 F.3d 250, 264 (2d Cir. 2017). Hence:

> This modest threshold requirement will only preclude certification if a proposed class definition is indeterminate in some fundamental way. If there is no focused target for litigation, the class itself cannot coalesce, rendering the class action an inappropriate mechanism for adjudicating any potential underlying claims. In other words, a class should not be maintained without a clear sense of who is suing about what. Ascertainability does not directly concern itself with the plaintiffs' ability to offer *proof of membership* under a given class definition, an issue that is already accounted for in Rule 23.

*Id.* at 269. As such, the ascertainability standard is not demanding; it is designed only to prevent certification of classes whose membership is actually indeterminable. *Gomez v. Lace Ent., Inc.*, No. 15 CIV. 3326 (CM), 2017 WL 129130, at *8  (S.D.N.Y. Nov. 24, 2015).

Plaintiffs argue that the proposed class of all sales representatives Defendants employed in New York since June 20, 2012 can be ascertained by reviewing Defendants' payroll records and state tax forms, and indeed Defendants have already identified at least 200 potential members of the class. (Pl.'s Mem. at 18).  Defendants do not dispute this. (Defs' Mem. at 3–11). The proposed class is ascertainable.

## VI.   Predominance and Superiority – Rule 23(b)(3)

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). This requirement is "satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 55 (E.D.N.Y. 2019) (quoting *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)). "[P]redominance does not require a plaintiff to show that there are no individual issues." *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 75 (S.D.N.Y. 2009). Relying on their own testimony and time records, and the time records of other employees, Plaintiffs contend that the predominant questions of liability for the Rule 23 class—whether Defendants systematically failed to pay overtime and provide accurate wage statements—are subject to common proof. (Pls' Mem. at 14–15). The Court agrees.

16

Defendants dispute that predominance exists, arguing that "individual inquiries abound" as to whether each member of the class performed overtime work, was subject to the commissioned sales exemption, or "whether their compensation was accurately recorded on their wage statements." (Defs' Mem. at 10). As discussed above, however, Defendants' proffered "individual inquiries" actually pertain to damages, not liability. "[I]t is well-settled that individualized damages calculations do not defeat predominance." *Johnson v. Brennan*, No. 10-CV-4172 (CM), 2011 WL 4357376, at *6 (S.D.N.Y. Sept. 16, 2011) (citing *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005) (collecting cases)); *see also Hasemann v. Gerber Products Co.*, 331 F.R.D. 239, 275-76 (E.D.N.Y. 2019) ("A class can be certified under Rule 23(b)(3) even if damages require individualized determination."); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 55 ("Typically, common issues predominate when liability is determinable on a class-wide basis, even where class members have individualized damages."); *Lewis v. Alert Ambulette Serv. Corp.*, No. 11-CV-442 (JBW), 2012 WL 170049, at *14 (E.D.N.Y. Jan. 19, 2012) ("Although each class member will have different damage claims depending on the length and time of employment, such individualized questions are easily manageable and do not defeat predominance." (citation omitted)); *Shabazz v. Morgan Funding Corp.*, 269 F.R.D. 245, 250-51 (S.D.N.Y. 2010) ("Any class action based on unpaid wages will necessarily involve calculations for determining individual class member damages, and the need for such calculations [does] not preclude class certification.") Where "Plaintiffs allege that all [c]lass [m]embers were systematically underpaid" due to the same policy and practice, and they "have provided testimony and time records corroborating these claims", differences as to the number of hours worked by or wages paid to each class member do not preclude class certification, including under Rule 23(b)(3). *See e.g., Atakhanova*, 2020 WL 4207437, at *9 (citing *Mendez v. MCSS Rest. Corp.*, No. 16-cv-

17

2746 (NGG)(RLM), 2019 WL 2504613, at *12 (E.D.N.Y. June 17, 2019)). This remains true even where damages calculations are made especially difficult by the defendant's failure to maintain accurate payroll and time records. *See, e.g., Perez v. Isabella Geriatric Center, Inc.*, No. 13-CV-7453 (RA), 2016 WL 5719802, at *4 (S.D.N.Y. 2016) ("Damages arising from unrecorded time do not necessarily require individualized inquiries, because [p]laintiffs are not required to prove such damages with exactitude ... plaintiffs are permitted to 'introduce a representative sample to fill an evidentiary gap created by the employer's failure to keep adequate records.'" (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456 (2016)). Indeed, the inquiry of whether employees "were supposed to be paid overtime for working more than 40 hours a week and were not" is "about the most perfect question[ ] for class treatment." *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007). "Some factual variation among the circumstances of the various class members is inevitable and does not defeat the predominance requirement." *Id*. Accordingly, Rule 23(b)'s predominance requirement is satisfied here.

Rule 23(b)(3) also requires a plaintiff to establish "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23 (b)(3). "In determining whether the class form represents a superior mode of adjudication, the court should consider, inter alia, 'the interest of the members of the class in individually controlling the prosecution or defense of separate actions' and 'the difficulties likely to be encountered in the management of a class action.'" *Iglesias-Mendoza*, 239 F.R.D. at 373 (quoting Rule 23(b)(3)). Courts also look to such factors as whether "class certification will serve judicial economy by avoiding the time and expense associated with a separate adjudication of each plaintiff's claim." *Barone v. Safway Steel Prods., Inc.*, No. 03-cv-4258 (FB), 2005 WL 2009882, *6 (E.D.N.Y. Aug. 23, 2005).

Plaintiffs contend that class adjudication is superior to other forms of litigation because it will allow for uniform resolution of the legal and factual issues, achieve judicial economy, convenience and fairness to all parties, and "an enormous amount of time and expense will be saved by" permitting the class to litigate their relatively small individual claims as a whole "instead of forcing each of these workers to maintain their own individual lawsuits." (Pls.' Mem. at 19–20). The Court cannot disagree with these contentions.

Defendants do not counter Plaintiffs' superiority arguments directly. Instead, they argue that superiority is lacking because the Rule 23 opt-out class may include more members with individual NYLL issues that substantially predominate over the FLSA opt-in collective, triggering the Court's discretion under 28 U.S.C. § 1367 to decline to exercise supplemental jurisdiction over the NYLL class. (Defs' Mem. at 10–11). As Plaintiffs correctly note, however, this precise argument has been rejected by the Second Circuit. *Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) ("Where section 1367(a) is satisfied, the discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of subsection 1367(c)." (quotation and citation omitted)). With the exception of subsection 1367(c)(2) – predominance, which has already been addressed – Defendants do not argue that any of the enumerated categories of the subsection apply.

Further, the Court has great flexibility in addressing developments as to individual issues that may arise as the class proceeding progresses. *See In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001) ("There are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including: (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class

after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class."), superseded by statute on other grounds as stated in *Attenborough v. Constr. & Gen. Bldg. Laborers' Loc. 79*, 238 F.R.D. 82, 100 (S.D.N.Y. 2006). Class certification will unquestionably increase efficiency and materially advance this litigation. By comparison, the alternative of denying class certification and forcing each putative class member to proceed individually-offers neither efficiency nor manageability. Accordingly, Plaintiffs have demonstrated, as required by 23(b)(3), the superiority of trying this case as a class action.

## VII.    The Class Definition is Not Overbroad

Defendants argue that the proposed class definition is overbroad because it includes all sales representatives in New York, even those "who did not work any overtime or suffer any damages []." (Defs' Mem. at 2). In so arguing Defendants once again misconstrue the class certification inquiry. At this stage, the inquiry is not to decide the merits or who was or was not harmed, but to decide who is properly in the class. The fact that some members of the proposed class may not have been harmed is not a bar to certification. *E.g.*, *Messner v. Northshore Univ. HealthSystems*, 669 F. 3d 802, 823 (7th Cir. 2012) ("All of this is at best an argument that some class members' claims will fail on the merits if and when damages are decided, a fact generally irrelevant to the district court's decision on class certification.") The proposed class definition is not overbroad.

## VIII.   The Proposed Notice is Flawed

Where a class is certified under Rule 23(b)(3), "the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2)(B). Defendants argue for a number of reasons that Plaintiffs' proposed class notice is flawed, and should the Court grant class

certification that the notice be rewritten. (Defs' Mem. at 3). I agree with Defendants that the notice is flawed for many of the reasons they cite,[5] and apparently Plaintiffs do as well. In their Reply, Plaintiffs tacitly acknowledge the deficiencies and suggest that "[s]hould the Court grant class certification, Plaintiffs respectfully request the opportunity to meet and confer with Defendants to address their objections and agree over the form and content of the notice." (Dkt. No. 88 at 2 n.1). Accordingly, should the Court adopt my recommendation that Plaintiffs' motion be granted, the parties should be given a brief period – 30 days – to agree upon a proposed notice, or submit competing notice to the Court for approval.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Plaintiffs' motion for class certification be granted in part. The Court should (1) certify a Rule 23 class of "All individuals employed in New York from June 20, 2012 to the present by NAPW, Inc. and Professional Diversity Network, Inc. to sell memberships to the women's networking organization known as National Association of Professional Women and the International Association of Women. Corporate officers, shareholders, directors and administrative employees shall not be part of the proposed class"; (2) direct Defendants to produce to Plaintiffs a list of all class members, including names and last known addresses, within thirty (30) days of the Court's Order; and (3) order the

---

[5] Defendants contend that as written, "'at time and 1½ the regular hourly wage for all hours worked over 40 each week' – although Plaintiffs likely intended the reference to '1½' to be read as 'one half,' this portion of the notice ('1½') could be misinterpreted to mean 'time plus one plus one half,' which is an improper statement of the overtime calculation rate." (Defs' Mem. at 3). Defendants also contend that the notice "fails to address that liability for the alleged claims has not yet been determined and it fails to state that Defendants are represented by counsel, they dispute the claims, and reserve their rights to assert all legal and factual defenses.  In addition, the notice does not reference this Court, or explain the difference between the FLSA opt-in portion of this action, and the New York Labor Law opt-out requirements." (*Id.*).

parties to submit an agreed-upon notice to class members, or competing versions thereof, within thirty (30) days of the Court's Order.

Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Margo K. Brodie within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).


RESPECTFULLY RECOMMENDED

/S/ RAMON E. REYES, JR.
Ramon E. Reyes, Jr.
United States Magistrate Judge

Dated: August 10, 2021
        Brooklyn, New York