UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DEBORA BAYNE, *et al.*,<br><br>Plaintiffs,<br><br>-against-<br><br>NAPW, INC. d/b/a NATIONAL ASSOCIATION OF PROFESSIONAL WOMEN d/b/a INTERNATIONAL ASSOCIATION OF WOMEN, and PROFESSIONAL DIVERSITY NETWORK, INC. d/b/a NATIONAL ASSOCIATION OF PROFESSIONAL WOMEN d/b/a INTERNATIONAL ASSOCIATION OF WOMEN,<br><br>Defendants. | : | <u>ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT AND COLLECTIVE ACTION SETTLEMENT</u><br><br>18-CV-3591 (MMH) |

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiff Deborah Bayne, individually and on behalf of all others similarly situated, sued Defendants NAPW, Inc. ("NAPW") and Professional Diversity Network, Inc. ("PDN"), alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA") and New York Labor Law, Art. 6, §§ 190 *et seq.* (the "NYLL"). (*See generally* ECF No. 1.)[1] The Court granted conditional certification of an FLSA collective action pursuant to 29 U.S.C. § 216(b) and a class action under Federal Rule of Civil Procedure 23(b)(3). (ECF Nos. 26,

[1] All citations to documents filed on ECF refer to the ECF document number and pagination in the ECF header unless otherwise noted. The Court assumes familiarity with the facts and procedural history of this action, as set forth in prior decisions. *Bayne v. NAPW, Inc.*, No. 18-CV-3591 (MKB)(RER), 2018 WL 11402163 (E.D.N.Y. Nov. 29, 2018); *Bayne v. NAPW, Inc.*, No. 18-CV-3591 (MKB)(RER), 2021 WL 4822426 (E.D.N.Y. Aug. 10, 2021), *R. & R. adopted* by 2021 WL 4820603 (E.D.N.Y. Oct. 15, 2021); *Bayne v. NAPW, Inc.*, No. 18-CV-3591 (MKB)(MMH), 2024 WL 633164, at *1 (E.D.N.Y. Feb. 6, 2024), *R. & R. adopted in part and rejected in part by* 2024 WL 1254197 (E.D.N.Y. Mar. 25, 2024).

93.) Before the Court is Plaintiffs' unopposed Motion for Preliminary Approval of the Class Action Settlement, which includes the parties' Joint Settlement Agreement and Release (the "Settlement Agreement") and proposed Notice of Class Action Settlement (the "Notice") and Claim Form. (ECF No. 139.) The Court heard oral argument on February 18, 2026, and reserved decision. (*See* ECF No. 144 ("Tr.").)[2]

For the reasons set forth below, the Motion for Preliminary Approval of the Class Action Settlement is **granted in substantial part**. A Final Fairness Hearing is scheduled for **Friday, April 9, 2027, at 10:00 a.m**.

## I. CLASS ACTION SETTLEMENT[3]

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Further, "[t]he court may only approve a proposed class action settlement if it is 'fair, reasonable, and adequate.'" *Caccavale v. Hewlett-Packard Co.*, No. 20-CV-974 (NJC)(ST), 2025 WL 882220, at *3 (E.D.N.Y. Mar. 14, 2025) ("*Caccavale I*") (citing Fed. R. Civ. P. 23(a) and *Moses v. New York Times Co.*, 79 F.4th 235, 242 (2d Cir. 2023)), *R. & R. adopted by* 2025 WL 882221 (E.D.N.Y. Mar. 21, 2025) ("*Caccavale II*"). At this preliminary stage, the Court must direct notice "in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment

[2] On February 19, 2026, the parties consented to the undersigned's jurisdiction for all further proceedings. (ECF Nos. 143, 145.)

[3] Unless otherwise indicated, capitalized terms used herein have the meanings defined in the proposed Settlement Agreement. (*See* ECF No. 139-2.)

on the proposal." Fed. R. Civ. P. 23(e)(1)(B); *Victoria Perez v. Allstate Ins. Co.*, No. 11-CV-1812 (AKT), 2019 WL 1568398, at *1 (E.D.N.Y. Mar. 29, 2019).

"Courts evaluating the fairness, reasonableness, and adequacy of a proposed settlement must consider the four factors outlined in Rule 23(e)(2) holistically, taking into account—among other substantive considerations stated in the rule—the proposed attorneys' fees and incentive awards." *Moses*, 79 F.4th at 243.[4] In reviewing the proposed Settlement Agreement for procedural and substantive fairness, the Court must also analyze the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).[5] After accounting for overlap between Rule 23(e)(2) and the *Grinnell* factors, the Court analyzes the settlement as set forth below.

**A. Likely Approval under Rule 23(e)(2)**

**1. Adequate Representation (Rule 23(e)(2)(A))**

The Class Representative and Class Counsel "have adequately represented the class." (ECF No. 141 at 1–2). Here, the Court considered "whether (1) plaintiff's interests are antagonistic to the interests of other members of the class and (2) [whether] plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Caccavale I*, 2025 WL

[4] The four factors in Rule 23(e)(2) are: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(A)–(D).

[5] The nine *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463 (cleaned up.)

882220, at *4 (quoting *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)). The Court previously noted that "Bayne's and the Opt-in Plaintiffs' interests are not antagonistic to those of the putative class; indeed, they appear to be completely aligned, and they have zealously represented the interests of the class" throughout the case. (ECF No. 90 at 15.) The same remains true today. Moreover, Plaintiffs' attorneys are qualified and experienced in wage and hour litigation. (ECF No. 141 at 1–2.)

### 2. Arm's Length Negotiations (Rule 23(e)(2)(B))

The proposed settlement resulted from arm's length negotiations after over five years of "adversarial litigation, substantial discovery, and mediation before an experienced private mediator as well as this Court, which allowed the parties to assess the strengths and weaknesses of their claims." (*See* ECF No. 139-2 at 14; ECF No. 141 at 2 (describing extensive discovery and dispositive motion practice).)

### 3. Adequacy of Class Relief (Rule 23(e)(2)(C))

The Court next evaluates whether relief for the Class is adequate, considering: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorney's fees; and (iv) any agreement required to be identified under Rule 23(e)(3). *Caccavale I*, 2025 WL 882220, at *6 (citing Fed. R. Civ. P. 23(e)(2)(C)(i–iv)). These factors overlap considerably with *Grinnell* factors one, four, five, and six, respectively. *Ying v. All-Ways Forwarding of N.Y. Inc.*, No. 20-CV-6242 (ENV)(MMH), 2025 WL 968586, at *7 (E.D.N.Y. Mar. 31, 2025).

a. The costs, risks, and delay of trial and appeal (Rule 23(e)(2)(C)(i))

"By reaching a favorable settlement prior to trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the Plaintiffs while the Defendants are still able to afford to do so." (ECF No. 139-3 at 15–16.) The relief provided for the Class is adequate considering not only the significant expense, but also the outcome of summary judgment motion practice, the delay of trial, and the risks associated with trial. (*Id.* at 17–28.) Specifically, the risks for Plaintiffs are substantial given that NAPW ceased operations in 2019 and PDN is the only Defendant. (*Id.* at 17.) If Plaintiffs could not establish PDN as their employer, then Plaintiffs could not collect damages at a trial. Further, based on counsel's research, PDN likely could not withstand a greater judgment. (*Id.*) Finally, trial would be very expensive given the number of witnesses required to establish Plaintiffs' claims.

b. The effectiveness of distributing relief and processing claims (Rule 23(e)(2)(C)(ii))

In evaluating the effectiveness of any proposed method of distributing relief to the class, the Court must determine whether the allocation formula is "fair and adequate," and the formula "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Caccavale I*, 2025 WL 882220, at *9 (quoting *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)). Here, the Claims Administrator will publish the Notice and Claim Form and send direct notice to Class Members via First Class Mail. (ECF No. 141 at 2–3.) The Settlement Agreement dictates a skip-trace process to correct any returned Notices and provides a mechanism for re-mailing any Notices that go undelivered. (*Id.*) The Settlement Agreement also includes a calculation of proportionate shares of the settlement funds. (ECF No. 139-3 at 10.) As such, the Court finds

that the distribution plan likely meets the Rule 23(e)(2)(C)(ii) standard as it is detailed, and fair and reasonable.

c. Attorneys' Fees (Rule 23(e)(2)(C)(iii))

Counsel intends to seek reimbursement of fees and costs from the Court, and will not seek more than one-third of the Gross Settlement Fund for fees (or $233,333.00). (ECF No. 141 at 3.) This is "'within the range of fee award percentages that courts in this Circuit have approved'" and therefore is reasonable. *Ying*, 2025 WL 968586, at *8 (approving $258,333.33 of $775,000 settlement fund (or one-third) as reasonable) (quoting *Flores v. CGI Inc.*, No. 22-CV-350 (KHP), 2022 WL 13804077, at *10 (S.D.N.Y. Oct. 21, 2022)).

**4. Equitable Treatment of Class Members (Rule 23(e)(2)(D))**

The Court finds that the Settlement treats all Class Members equitably relative to one another. Each Class Member's proportionate share of the Settlement will be based on the number of days worked, while the Class Representative will receive additional award payments. (ECF No. 141 at 4.) Specifically, each Class Member's proportionate share, aside from service award payments for the Class Representative, "will be calculated by dividing the number of days such Class Member was employed by the total number of collective days worked by all Class Members . . . then each Class Member's proportionate share (*i.e.*, percentage) is multiplied by the Net Settlement Fund to determine each Class Member's allocated amount." (ECF No. 141 at 4.) Similar distribution plans are generally accepted by courts in this district. *Caccavale I*, 2025 WL 882220, at *12 (collecting cases).

### 5. Remaining *Grinnell* Factors

a. Ability to Withstand a Greater Judgment (Factor Seven)

"[I]t is highly unlikely that Defendants would be able to withstand a greater judgment" as NAPW ceased operations in 2019 and PDN represented that it could not withstand any greater judgment. (ECF No. 139-1 ¶¶ 9–10; ECF No. 139-3 at 18.) As such, this factor weighs in favor of preliminary approval.

b. Range of Reasonableness (Factors Eight and Nine)

The Settlement amount, before the provision of fees and service awards or costs, provides a recovery of $700,000.00, which is approximately 36% of Plaintiffs' estimated damages. (ECF No. 139-3 at 18–19.) "Such a recovery is well within the percentage recovery that this Court and others have found to be sufficiently fair and reasonable[.]" *See Caccavale I*, 2025 WL 882220, at *10 (finding recovery of 33.3% fair and reasonable); *see also Lora v. To-Rise, LLC*, 452 F. Supp. 3d 5, 9 (E.D.N.Y. 2019) (finding recovery of 40% fair and reasonable).

Accordingly, the Settlement Agreement is preliminarily approved under Fed. R. Civ. P. 23(e).

## B. Likely Class Certification

On October 15, 2021, the Court certified a Rule 23(b)(3) Class consisting of all "individuals employed in New York from June 20, 2012 to the present by NAPW, Inc. and Professional Diversity Network, Inc. to sell memberships to the women's networking organization known as National Association of Professional Women and the International Association of Women," not including "[c]orporate officers, shareholders, directors and administrative employees." (*See* Oct. 15, 2021 Order, ECF No. 93.)

Here, to preliminarily approve the Settlement Agreement, the Court considers the factors under Rule 23(a)–(b), and finds that it is likely able to certify the Class for purposes of judgment on the proposal. *Caccavale I*, 2025 WL 882220, at *15 (cleaned up) (citing Fed. R. Civ. P. 23(e)(1)(B)(ii)).

**1. Numerosity (Rule 23(a)(1))**

There are approximately 622 members of the potential Class. (Tr. 6:15–24.) A class size of 622 "presumptively establishes numerosity." *See Roberts v. Genting New York LLC*, 802 F. Supp. 3d 472, 476 (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F. 3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members")).

**2. Commonality (Rule 23(a)(2))**

The claims of all Class Members in this case raise common issues of law and fact because the claims are based on Defendants' failure to pay Plaintiffs overtime compensation, in violation of the FLSA, and to provide wage statements, in violation of the NYLL. *Lora*, 452 F. Supp. 3d at 10 (finding that class members shared common issues of fact and law, including whether defendants failed to pay them wages in violation of state wage and hour laws.)

**3. Typicality (Rule 23(a)(3))**

Similarly, typicality exists because each Class Member's claims arise from the same course of events. *Caccavale I*, 2025 WL 882220, at *16. The claims of the individually named Plaintiffs for unpaid overtime and failing to provide proper wage statements are typical of the claims of the Class Members they seek to represent. (ECF Nos. 90, 93.)

#### 4. Adequacy of Representation (Rule 23(a)(4))[6]

The Court finds that the representative parties, including the named Plaintiffs and Class Counsel, will fairly and adequately protect the interests of the Class. (*See* § I.A.1., *supra.*)

#### 5. Ascertainability

Because the Second Circuit recognizes an implied requirement of ascertainability for class certification; the Court considers "'whether a proposed class is defined using objective criteria that establish a membership with definite boundaries.'" *Caccavale I*, 2025 WL 882220, at *17 (citing *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) and quoting *In re Petrobas Secs.*, 862 F.3d 250, 269 (2d Cir. 2017)). The Court will likely find that the Class is ascertainable because it is defined using objective criteria, such as specific dates, employment location, job position, and employer. (*See* ECF No. 139-2 at 1–4.)

#### 6. Predominance and Superiority (Rule 23(b)(3))

Plaintiffs have satisfied the predominance requirement and demonstrated, as required by Rule 23(b)(3), the superiority of trying this case as a class action. (ECF No. 90 at 15.) For

[6] "When a court certifies a class under Rule 23, it must also 'appoint class counsel who must fairly and adequately represent the interests of the class.'" *Piney v. City of New York*, No. 25-CV-671 (DEH)(SLC), 2025 WL 3089894, at *11 (S.D.N.Y. Nov. 5, 2025) (cleaned up) (quoting Fed. R. Civ. P. 23(g)(1)(A), (B)). Courts consider the following factors when appointing class counsel: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions . . . and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]" Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv). The Court finds that Virginia & Ambinder LLP is a firm with qualified and experienced attorneys, who typically handle wage and hour actions, and will fairly and adequately represent the interests of the Class. (*See* § I.A.1., *supra.*) Accordingly, the Court appoints Virginia & Ambinder LLP as Class Counsel. Moreover, for purposes of settlement, and pursuant to Rule 23, the Court appoints Deborah Bayne as Class Representative.

these reasons, the Court certifies the following class for settlement purposes only under Fed. R. Civ. P. 23(e) as follows: "all sales representatives employed in New York to sell memberships for the National Association of Professional Women and the International Association of Women from June 20, 2012 through July 5, 2019." (*See* ECF No. 139-2 at 2.)

## II. CLASS NOTICE

### A. Reasonableness of Notice and Claim Form

Now that the Court has found that it will likely certify the Class for purposes of settlement, the Court must direct to Class Members "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The Court finds that the Notice and Claim Form submitted by Plaintiffs for the Court's approval is fair and reasonable and satisfies each requirement under Rule 23(c)(2)(B). The Notice clearly and concisely states: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). (*See* ECF No. 139-2 at 17–23; ECF No. 141 at 3.)

The Court also finds that the Notice complies with the Due Process Clause of the Fifth Amendment. "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules [of Civil Procedure] is measured by reasonableness." *Caccavale II*, 2025 WL 882221, at *2 (quoting *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 719–20 (2d Cir. 2023)). "[A] Rule 23 Notice will satisfy

due process when it describes the terms of the settlement generally, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing." *Id.* at *3 (quoting *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 58–59 (E.D.N.Y. 2019)).

Here, the Notice is substantively reasonable and complies with the Due Process Clause because it explains the nature of the action; the definition of the Class and Collective Action; the relevant claims, issues, or defenses; the terms of the settlement; that a Class Member may appear through an attorney; that the Court will exclude from the Class any member who requests exclusion, and the time and manner for doing so; the procedures for objecting; and the binding effect of a class judgment on members under Rule 23(c)(3). (*See* ECF No. 139-2.) The Notice also describes the terms of the Settlement generally and will include the time, date, and location of the Final Fairness Hearing. (*Id.*) The Notice also explains attorneys' fees, service awards, costs, and the method of calculating the settlement amount for each participating Class Member and includes a claim form. (*Id.*)

**B. Procedural Reasonableness**

The Court must also evaluate the reasonableness by which Class and Collective members will be identified and sent the Notice, and whether it complies with Rule 23(c). *See* Fed. R. Civ. P. 23(c)(2)(B). The Notice and all relevant forms will be mailed via First Class United States mail, postage prepaid, to the last known address of each Class and Collective Member. (ECF No. 139-2 at 5.) Plaintiffs will provide a list of identifying information for all Class Members to Defendants who will review the list and provide it to the Claims Administrator, within 15 days of the Court's Order granting preliminarily approval of the Settlement. (*Id.*) The Claims Administrator will mail the Notice to each Class and Collective

Member within 60 days after entry of the Court's Order granting preliminary approval. (*Id.*) The Claims Administrator will also take reasonable steps, including a skip-trace to obtain the correct addresses of the Class Members for whom the notices are returned by the post office as "undeliverable" and to attempt re-mailings. (*Id.*) The Court finds that "[t]hese procedures provide for a reasonable effort to identify and notify" all Class Members of the proposed Settlement. *Caccavale II*, 2025 WL 882221, at *3 (citing Fed. R. Civ. P. 23(c)(2)(B)).

Accordingly, the Court approves the form, substance, and requirements of the Notice and Claim Form (*see generally* ECF Nos. 139-1, 139-2) and directs distribution to the Class as set forth below.

## III. PRELIMINARY APPROVAL OF FLSA COLLECTIVE ACTION

### A. Collective Action Certification

On November 29, 2018, the Court granted Plaintiffs' motion to conditionally certify a collective action pursuant to 29 U.S.C. § 216(b). (*See* ECF No. 26.) The Court conditionally certified the following Collective Action: "All current and former employees of [NAPW] and [PDN] who worked as sales representatives selling memberships to the National Association of Professional Women or International Association of Women from [November 29, 2015] through the present." (*Id.* at 8–9.)

In the Notice, Plaintiffs describe members of the "Collective" who were "employed by NAPW anywhere in the United States to sell memberships to the National Association of Professional Women or the International Association of Women between June 20, 2015 and July 5, 2019 . . . **and** submitted a timely consent to join form that was filed with the Court." (ECF No. 139-2 at 19) (emphasis in original). In the Settlement Agreement, Plaintiffs describe the "FLSA Collective" as the "individuals, including Named Plaintiff Bayne, who filed timely

consent to join forms" and the "FLSA Collective Period" as the "relevant statutory period starting June 20, 2015." (ECF No. 139-2 at 3.) To date, 74 Plaintiffs have timely filed opt-in forms. (Tr. 6:5–10.)

Following additional discussion at the Final Fairness Hearing, the Court conditionally certifies the FLSA Collective for settlement purposes only as: "Individuals employed by NAPW anywhere in the United States to sell memberships to the National Association of Professional Women or the International Association of Women between June 20, 2015 and July 5, 2019 who submitted a timely consent to join form that was filed with the Court." The Court finds that the opt-in Plaintiffs are similarly situated to the named Plaintiffs because they "share legal or factual similarities material to the disposition of their [FLSA] claims." *Caccavale I*, 2025 WL 882220, at *20.

**B. *Cheeks* Fairness Review**

Because this is a FLSA collective action, the Court must determine whether the Settlement Agreement is fair and reasonable under the standards set forth in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) and the factors in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012).[7] For many of the reasons already discussed, the Court finds that the Settlement Agreement is fair and reasonable under *Cheeks*. *First*, the range of possible recovery is reasonable. The $700,000.00 gross settlement fund equals 36% of the midpoint. (*See* ECF No. 141 at 5.) *Second*, the agreement enables the parties to avoid

[7] The factors outlined in *Wolinsky*, none of which are dispositive, are: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at 335 (cleaned up).

anticipated burdens and expenses of litigation, and trial. (*Id.* at 5; *see also* § I.A.3.a., *supra*.) *Third*, by settling, the parties avoid litigation risks, including with respect to liability and damages. *Fourth*, the proposal was negotiated at arm's length after years of litigation, discovery, and mediation. (ECF No. 141 at 5; *see also* § I.A.2.) *Finally*, there is no evidence of any fraud or collusion as this settlement was reached after years of adversarial litigation with the assistance of a mediator and the Court. (ECF No. 141 at 5.) As such, each of these factors support a finding of fairness and reasonableness.

Accordingly, the Settlement Agreement is preliminarily approved under *Cheeks*.

## IV. <u>CONCLUSION</u>

The Court preliminarily finds that the Settlement Agreement resulted from good faith, arm's length negotiations, and it is sufficiently fair, reasonable and adequate to the Class Members to warrant providing notice of the Settlement Agreement to Class Members and for the Court to hold a Final Fairness Hearing.

However, as discussed at the February 20, 2026 motion hearing, the Court strikes Section 3.1(D) of the Settlement Agreement to the extent that it authorizes the Claims Administrator to distribute the Final Settlement Amount within fifteen days "after the Qualified Settlement Fund is fully funded." Instead, within fifteen days after the Qualified Settlement Fund is approved by the Court, the Claims Administrator will distribute the Final Settlement Amount by making payments in accordance with Section 3.1(D)(1)–(6) of the Settlement Agreement.

### A. Final Fairness Hearing

The Court hereby preliminarily approves the Settlement Agreement, subject to further consideration at a Final Fairness Hearing on **April 9, 2027 at 10:00 a.m.** in Courtroom 13C

South at the United States District Court for the Eastern District of New York, U.S. Courthouse, 225 Cadman Plaza East, Brooklyn, New York 11201, for the following purposes:

To determine whether the Settlement Agreement is fair, reasonable, and adequate, and should get final approvement by the Court;

To determine whether the Final Approval Order as provided under the Settlement Agreement should be entered and to determine whether the Release of Claims, as set forth in the Settlement Agreement, should be ordered;

To determine whether the proposed distribution of the Settlement is fair and reasonable and should get final approvement by the Court;

To consider Class Counsel's application for an award of attorneys' fees and costs, which is not to exceed one-third of the Gross Settlement Amount;

To consider the proposed Service Award payments, including to the Class Representative;

To consider the proposed payment to the Claims Administrator;

To consider Class Members' objections to the Settlement Agreement, if any, whether submitted previously in writing or presented orally at the Final Fairness Hearing by Class Members (or by counsel on their behalf) if they gave required notice that they intended to object at the Final Fairness Hearing; and

To rule upon such other matters as the Court may deem appropriate.

**B. Deadlines**

By **October 15, 2026** (*i.e.*, within 15 days of the entry of this Order), Defendants shall provide the Claims Administrator with the identity of all members of the proposed Settlement Class and Collective, the names, last known addresses, and dates of employment of each Class

Member or nominees or custodians of each Class Member, that exist or are shown by any records in the possession, custody, or control of Defendants or their respective affiliates, agents, employees, officers, directors, members, parents, subsidiaries, attorneys, representatives, advisors, administrators, predecessors, successors, insurers, accountants, advisors, or anyone acting on its behalf. The information must be sufficient to allow for the calculation of total weeks worked of all Class and Collective Members. This information will be kept confidential and will not be used for any purpose other than to provide the notice contemplated by this Order.

By **November 30, 2026** (*i.e.*, within 60 days of the entry of this Order), Plaintiffs, through the Claims Administrator, shall cause the Class Notice (Exhibit A to the Settlement Agreement at ECF No. 139-2 pages 18–23) together with the Claim Form (Exhibit B to the Settlement Agreement at ECF No. 139-2 page 25) and IRS Forms W-4 and W-9, to be mailed by First Class Mail, postage prepaid to all Class and Collective Members who can be identified with reasonable effort by Class Counsel. The Claims Administrator shall take reasonable steps, including a skip-trace to obtain the correct addresses of the Class Members for whom the notices are returned by the post office as "undeliverable." Within 7 days of receipt of an undeliverable notice sent to Class Members of FLSA Collective Members, the Claims Administrator shall attempt to locate an alternative address and issue a second mailing, and notify Class Counsel and Defendants' Counsel of any mailings that are returned as undeliverable after the first mailing as well as any such mail returned as undeliverable after any subsequent mailing(s).

Class Counsel, through the Administrator, shall make good faith efforts to complete mailing of all Class Notice and Claim Forms as required by this Order. As soon as the mailing

is complete, Class Counsel shall file a letter via ECF confirming that all Class Notice and Claim Forms have been mailed as required by this Order. If mailing of all Class Notice and Claim Forms is not completed by **February 8, 2027** (*i.e.*, at least 60 days before the April 9, 2027 Final Fairness Hearing), Class Counsel shall immediately file a letter via ECF advising of the status of the mailing required by this Order.

In order to be an Authorized Claimant and be eligible to receive payment of his/her/their Allocated Amount, a Class Member or FLSA Collective Member (including the representative of any Class Member or FLSA Collective Member's estate) must submit by mail, fax, or e-mail a completed and signed Claim Form and completed and signed Forms W-4 and W-9 to the Claims Administrator and those documents must be mailed to the Claims Administrator, such that it is transmitted and/or postmarked on or before the Notice Response Deadline. Plaintiffs shall direct the Claims Administrator to stamp the receipt date on the original of each executed Claim Form and on a copy of each executed Forms W-4 and W-9 that it receives. Within 7 days of receipt, Plaintiffs shall direct the Claims Administrator to send copies of each executed Claim Form to Class Counsel and Defendants' Counsel by email. Plaintiffs shall direct the Claims Administrator to provide a list of Authorized Claimants to Class Counsel and Defendants' Counsel by e-mail no later than 10 days after the Notice Response Deadline. Unless otherwise agreed upon in writing or directed by the Court, the Notice Response Deadline shall be extended an additional 15 days for individual Class Members or FLSA Collective Members based on good cause, including but not limited to, incorrect address, hospitalization, military service, and the like.

By **January 29, 2027** (*i.e.*, within 60 days from the date the Notice and Claim Form are mailed to the Class and Collective Members), any Class Member may opt-in, opt-out, or

object to the Settlement Agreement. Plaintiffs shall direct the Claims Administrator to calculate this deadline and clearly indicate it where applicable on the Notice and Claim Forms. Extensions of this deadline are permitted in accordance with the terms of the Settlement Agreement, pursuant to agreement between the parties, or as the Court otherwise directs.

Any Class FLSA Collective Member may opt-in by submitting by mail, fax, or e-mail a completed and signed Claim Form and completed and signed Forms W-4 and W-9 to the Claims Administrator and those documents must be mailed to the Claims Administrator, such that it is transmitted and/or postmarked on or before the Notice Response Deadline.

Any Class Member who has not submitted a Claim Form may opt out of the class by mailing an Opt-Out Statement to the Claims Administrator. Plaintiffs shall direct the Claims Administrator to stamp the receipt date on the original of each Opt-Out Statement that it receives and to serve copies of each Opt-Out Statement on Class Counsel and Defendants' Counsel by e-mail not later than 7 days after receipt of the Opt-Out Statement. Plaintiffs shall direct the Claims Administrator to retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Agreement.

Any Plaintiff who does not mail a timely Opt-Out Statement shall be subject to the release set forth in Section 4 the Settlement Agreement.

Any Class Member who wishes to present objections to the Settlement Agreement at the Final Fairness Hearing must first set them forth in a written statement, which must be mailed, e-mailed, or faxed to the Claims Administrator and postmarked or transmitted by **January 29, 2027** (*i.e.*, within 60 days of the mailing of the Notice and Claim Form). To be considered, the written objections must be received by the Claims Administrator in the mail

during the Opt-Out Period. Plaintiffs shall direct the Claims Administrator to stamp the date received on the original of each objection, and to send copies of each objection to Class Counsel and Defendants' Counsel by email no later than 7 days after receipt thereof. Objections may be withdrawn at any time.

By **March 19, 2027** (*i.e.*, 21 days before the Final Fairness Hearing), Class Counsel shall file its Motion for Final Approval and any application for attorneys' fees and costs. With its Motion for Final Approval, Class Counsel shall file with the Court all objections received. Upon request, an objector may also appear and be heard at the Final Fairness Hearing either in person or through counsel. No Plaintiff shall have the right to appear at the Fairness Hearing unless they have properly submitted a timely objection that complies with the procedures provided in Section 2.5(A) of the Settlement Agreement. Any Plaintiff who has submitted a timely Opt-Out Statement may not submit objections to the settlement. If any Plaintiff who mails a timely Opt-Out Statement also mails an objection to the settlement, the Opt-Out Statement shall control, and the Parties shall request that the Court disregard the objection.

Plaintiffs shall file all objections with their Motion for Final Approval of the Class Settlement, unless such objections have been withdrawn by that date. Class Counsel and/or Defendants' Counsel may file with the Court a written response to any filed objections no later than **March 26, 2027** (*i.e.*, 14 days before the Final Fairness Hearing).

**By October 30, 2026**, the parties shall file a letter via ECF certifying that they have provided notice of the parties' proposed settlement to appropriate federal and state officials under 28 U.S.C. §§ 1715(b) and (d).

The parties shall appear for a Final Fairness Hearing on **Friday, April 9, 2027 at 10:00 a.m.** in Courtroom 13C South at the United States District Court for the Eastern District of New York, U.S. Courthouse, 225 Cadman Plaza East, Brooklyn, New York 11201.

**SO ORDERED.**

Brooklyn, New York
September 30, 2026

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge